WILLIAM S. BERNHEIM SBN 56555
BERNHEIM, GUTIERREZ & McCREADY
255 North Lincoln Street
Dixon, CA 95620
Ph.: (707) 678-4447
Fax: (707) 678-0744
e-mail: law@bernheimlaw.net

Attorneys for Debtors
PAUL SANDNER MOLLER and
ROSA MARIA MOLLER

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

In re

PAUL SANDNER MOLLER
and ROSA MARIA MOLLER,

Debtors

Bankruptcy Case No. 2009-29936-C-11

Chapter 11

**OPPOSITION TO MOTION OF VARGAS et al. (STERLING PACIFIC) FOR RELIEF FROM AUTOMATIC STAY TO ALLOW FORECLOSURE TO GO FORTH**

Place: Dept. C, Courtroom 35
6th Floor, 501 I St.
Sacramento CA (Judge Klein)

TO THE HONORABLE CHRISTOPHER M. KLEIN, UNITED STATES BANKRUPTCY JUDGE:

Paul Sandner Moller and Rosa Maria Moller ("Debtors"), the Debtors-in-Possession in the above-captioned bankruptcy case, by and through undersigned counsel, hereby opposes the Motion for Relief from Automatic Stay relating to a 35,000 ft² commercial building on real property located at 1222 Research Park Dr, Davis CA 95618 ("Business parcel") owned by the Debtors. The motion filed on behalf of Movants, Maria E. Vargas et.al. ("Sterling Pacific") pursuant to

362(d)(1). For the reasons discussed below, Sterling Pacific is not entitled to relief from the Automatic Stay under the Code Provision.

This opposition is based on there being sufficient equity to protect movant, Debtors have filed a Plan of Reorganization that has a reasonable possibility of being confirmed within a reasonable time, and the subject property is necessary for an effective reorganization. This creditor is not significantly prejudiced by being kept in the plan and may in fact be benefiting from the senior note being stayed from foreclosing. If relief is granted the unsecured creditors will be greatly prejudiced.

### I. RELEVANT FACTS

On May 18, 2009 Paul Sandner Moller and Rosa Maria Moller filed their Voluntary Petition under Chapter 11 of the Bankruptcy Code (the "Petition Date"). The Debtors have over $50,000,000 in assets which include: significant shares of Freedom Motors, Inc. ("FM") valued at $42.7 million, significant shares of Moller International, Inc. ("MI") valued at $6.7 million, a Business Parcel including 35,000 ft² commercial building real property located at 1222 Research Park Dr, Davis CA 95618 valued at $4.9 million, a Residence Parcel, an Agricultural Parcel and a Chile Parcel. FM and MI control and own the Rotapower® engine technology. This Plan contemplates the licensing of the Rotapower® engine technology and alternatively the sale of the Business Parcel with the proceeds being used to make payment of 100% of all Allowed Claims as described in Section III below. The licensing of the Rotapower® engine technology is active negotiation that should conclude before March 1, 2010. The engine and other prototypes utilizing the technology have been built on the business parcel with the specialized tooling and tools installed on the business parcel. Ability to perform under the proposed licenses will be severely compromised and delayed if access to the business parcel is lost and the tooling and tools require moving and securing new quarters.

The Debtors should be considered in the same light as a single asset real estate entity is defined in Code § 101(51)(B). A key asset of the Debtors is the Business parcel because it has significant value which is in flux and the 35,000 ft² commercial building is the home of Freedom Motors in which the

BERNHEIM
GUTIERREZ
&
MCCREADY

255 NORTH
LINCOLN
STREET

DIXON
CA
95620

PHONE
(707) 678-4447

FAX
(707) 678-0744

Debtors' interest is valued at $42.7 million and of Moller International, Inc in which Debtors' interest is valued at $6.7 million. Moller International, Inc. is a publicly traded company.

## AGREED FACTS

1. Movants hold the beneficial interest in a Promissory Note ("Note") dated April 13, 2005, in the original principal amount of $700,000 payable to Sterling Pacific Financial, Inc., ("Sterling Pacific"). The Note was secured by a Deed of Trust recorded April 25, 2005 with respect to commercial real property owned by the Debtors in Yolo County in the City of Davis and referred to in the Debtors' amended reorganization plan as the Business parcel.

2. By written agreement this Deed of Trust was subordinated on February 8, 2007 to a deed of trust securing an obligation owing to Exchange Bank (the "Senior Obligation").

3. Debtors' Chapter 11 petition was filed May 18, 2009. Prior to that date, and at all times since, the debtors were in default under the Note, Including:

    a. Failure to make payments due on the Note on or after August 1, 2008;

    b. Failure to pay property taxes due on the Real Property for the 2007-2008 fiscal year, in an amount in excess of $36,000, which remains in default;

    c. Failure to pay the Senior Obligation, causing the holder of said encumbrance to record a notice of default, and a subsequent notice of trustee's sale with respect to the Business parcel. The notice of trustee's sale dated January 21, 2009, stated the amount need to pay the senior Obligation as $3,411,881.00 prior to $238,928 paid in February and March.

4. The Debtors' schedule listed the then value of the business parcel as $4,900,000.00. An equity cushion of approximately $900,000 existed and is being reduced as interest accrues on the first [from April 1, 2009 only] and second.

## ADDITIONAL FACTS

5. Movants' Note is not purchase money or otherwise compromised. Movants' subordinated its position to the senior obligation of Exchange Bank in 2007. It is presumed that at least at that time, Movant believed the equity was sufficient or that recourse to personal liability was sufficient.

BERNHEIM
GUTIERREZ
&
MCCREADY

255 NORTH
LINCOLN
STREET

DIXON
CA
95620

PHONE
(707) 678-4447

FAX
(707) 678-0744

6. As part of a forbearance of a sale by Exchange Bank, the holder of the first on the Business parcel, in February and March 2009, Debtors paid Exchange Bank $238,928 to bring the Exchange Bank current. When Debtors were unable to make a later scheduled payment, Exchange Bank elected to go ahead with a Trustee Sale. The scheduling of a Trustee Sale by Exchange Bank to have taken place in May of 2009, prompted this bankruptcy sale. If a trustee sale had been held, there is no evidence that Sterling Pacific would have bid to pay off Exchange Bank and might likely have become an unsecured creditor of the Debtors. Sterling Pacific was a beneficiary of the Debtors' $238,928 total payments made to Exchange Bank during February and March 2009 as it added to the equity cushion in the Business parcel.

7. The market for the Business parcel is improving and the property has had significantly better market valuations in the past. There was an offer in the past at $6,500,000.00. The Debtors' valuation of the Business parcel at $4,900,000 took into account a significant drop in the value of the property in the current market.

8. A key element of the plan is the licensing of the technology assigned to Freedom Motors. Freedom Motors operates out of the Business parcel. Both research and the building of prototypes and limited production has and can be done on the premises. The premises have been adapted to house a wind tunnel and large industrial equipment. Loss of the building will significantly negatively impact the likelihood of licensing alternative of the plan's being successful and the amount of proceeds of such licensing.

## II. STERLING PACIFIC IS NOT ENTITLED TO STAY RELIEF UNDER CODE § 362(D)

### A. "Cause" Does not Exist Under Code § 362(d)(1) Because Sterling Pacific is "Adequately Protected"

Under code § 362(d)(1), a creditor may obtain stay relief "for cause", including "lack of adequate protection of an interest in property" of such party. The purpose of providing adequate protection to a secured lender is "to ensure that a secured creditor receives in essentially what he bargained for." Sharon Steel Corp. v. Citibank, N>A> (In re Sharon Steel corp.), 159 B.R. 165, 169 (W>D> Pa. 1993). Bankruptcy Code § 361 specifies certain means of providing adequate protection; however those are not

BERNHEIM
GUTIERREZ
&
MCCREADY

255 NORTH
LINCOLN
STREET

DIXON
CA
95620

PHONE
(707) 678-4447

FAX
(707) 678-0744

the exclusive means of providing adequate protection to a secured lender. Id. Exactly what constitutes adequate protection must be decided on the facts of the case; however, "[t]he existence of an equity cushion alone can constitute adequate protection." Id.

An equity cushion providing adequate protection to a secured creditor is amply demonstrated in In re Mellor, 734 F.2d 1396, 1401 (9th Cir.1984). In In re Mellor, a secured creditor sought relief from the automatic stay. The Ninth circuit held that a 20% equity cushion in the collateral was sufficient to provide adequate protection to the creditor and, therefore, denied the request to lift the stay. Id. At 1401.

In the matter before this court, the value of the collateral subject to the Sterling Pacific's lien is conceded by Sterling Pacific to be at least $4,900,000.00. Sterling Pacific ("SP") speaks of a equity cushion of about $630,000.00 (actually $1,070,000 if $238,928 payment is included).

This is an equity cushion of 13% (22% if the $238,928 payment is included) with respect to the value of the entire property but an equity cushion of approximately 75% (130% if the $238,928 payment is included) of SP lien of $823,500.00. SP is in a leveraged position as a result of SP subordinating their lien to Exchange Bank in February of 2007. If SP secures title at a foreclosure sale, a later unforced sale may allow SP to net the equity cushion and produces over a 90% return on the original loan amount of $700,000.00 or actually over 150% return if the $238,928 payment is included. Even conceding an 8% cost of sale produces over 55% or 130% return on the original loan amount of $700,000.00.

The debtors plan and disclosure were amended October 27, 2009. The substantive and procedural flaws of the original plan and disclosure were commented on by the US Trustee and addressed. Another point addressed by SP is that the original plan called for the payments not to commence until September 1, 2010. This was changed in the amended plan to have the payments commence May 1, 2010 which is significantly earlier and puts SP at less risk.

Thus, pursuant to In re Mellor, the Sterling Pacific is adequately protected and is not entitled to stay relief under 11 U.S.C. § 362(d)(1).

**B. Stay Relief is not Proper Under Code § 362(d)(3) Because the Debtors Has Filed an Amended Plan of Reorganization That has a Reasonable Possibility of Being Confirmed Within a Reasonable Time.**

MOLLER OPPOSITION TO MOTION FOR RELIEF HTP-1

A secured creditor at times may obtain stay relief under of Code § 362(d)(3) unless the debtor has, within 90 days after the order for relief was entered, "filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time" or commences monthly payments. Sterling Pacific has not advanced this as a ground for their motion. Debtors are moving forward with an amended plan which is set for approval consideration on December 2, 2009. The original plan filed September 17, 2009 received written comment only from the US Trustee's office. These comments triggered the amendment of the Disclosure and Plan.

The amended plan has a number of options and all call for payments to commence on May 1, 2010 or sooner if possible.

The Debtors believe that the Plan satisfies all requirements of the Bankruptcy Code and outlines a stratefy for using the subject Property for the benefit of the Sterling Pacific and all creditors, while preserving some equity for the Debtors.

### C. The Subject property is Necessary for an Effective Reorganization and Debtors Does Have Equity in the Subject property Making Code § 362(d)(2) Inapplicable

Code § 362(d)(2) permits stay relief "with respect to a stay of an act against property under subsection (a) of this section, if (A) the debtor does not have an equity in such property; (B) such property is not necessary to an effective reorganization."

The issue of equity was discussed above. Of importance, proposed plan alternatives make used of the interest of Debtors as significant shareholders, executives of and loan holders of Freedom Motors and Moller International, Inc. These are significant assets with the interests having a combined value exceeding $50,000,000.00. These two equities are housed and have been house at the subject property for years. The subject property is necessary to an effective reorganization to benefit all the creditors. Loss the subject property will have adverse consequences on Debtors licensing efforts and would disrupt the ability of the Debtors to perform under licenses and require a move at create expense and create delays.

A declaration by Debtor Paul Moller is attached which addresses the above contentions.

Sterling Pacific is not entitled to stay relief under Code § 362(d)(2).

### III. <u>CONCLUSION</u>

BERNHEIM
GUTIERREZ
&
MCCREADY

255 NORTH
LINCOLN
STREET

DIXON
CA
95620

PHONE
(707) 678-4447

FAX
(707) 678-0744

For the reasons stated above, the Debtors respectfully request that Sterling Pacific's Motion be denied.

//

RESPECTFULLY SUBMITTED this 2nd day of November, 2009.

Dated: 11/2/09     By:     /s/ William S. Bernheim
                           William S. Bernheim, Attorney for Debtors

BERNHEIM GUTIERREZ & MCCREADY

255 NORTH LINCOLN STREET

DIXON CA 95620

PHONE (707) 678-4447

FAX (707) 678-0744