FILED
January 14, 2010
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0002348806

SCOTT C. CLARKSON, ESQ. (SBN 143271)
EVE A. MARSELLA, ESQ. (SBN 165797)
CLARKSON, GORE & MARSELLA, APLC
3424 Carson Street, Suite 350
Torrance, California 90503
Telephone: (310) 542-0111
Fax No: (310) 214-7254

Attorneys for Secured Creditor Bay Area Financial Corporation

## UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

## SACRAMENTO DIVISION

| | |
|---|---|
| In re<br><br>PAUL SANDNER MOLLER and,<br>ROSA MARIA MOLLER,<br><br>Debtors. | Case No. 09-29936<br>D.C. No. SCC-1<br><br>**MOTION FOR RELIEF FROM THE AUTOMATIC STAY; MEMORANDUM OF POINTS AND AUTHORITIES; AND WAIVER OF FRBP 4001(a)(3)**<br><br>Date: February 16, 2010<br>Time: 9:30 a.m.<br>Judge: Hon. Christopher M. Klein<br>Place: 501 I Street, 6th Flr.<br>Sacramento, CA<br>Courtroom 35; Dept. C<br><br>**28 Day Notice: Local Rule 9014-1(f)(1)** |

TO THE HONORABLE CHRISTOPHER M. KLEIN, UNITED STATES BANKRUPTCY JUDGE:

Secured Creditor Bay Area Financial Corporation ("Bay Area") respectfully moves for Relief from the Automatic Stay ("Motion" or "MRAS") in the Voluntary Chapter 11 case filed by Paul Sandner Moller and Rosa Maria Moller (hereinafter "Debtors") filed on May 18, 2009,

to allow Bay Area Financial, and its respective agents, representatives, and assignees, to conduct a non-judicial foreclosure sale of the real property commonly known as 9350 Curry Road, Dixon California 95620 ("Residential Property"), to permit the purchaser at the non-judicial foreclosure to obtain possession of the Residential Property upon completion of said sale, and to waive the ten-day stay of Federal Rule of Bankruptcy Procedure 4001(a)(3), on the grounds that cause exists for such relief under 11 U.S.C. §362(d)(1) and (2), in that (a) Bay Area lacks adequate protection for its interest in the Residential Property, (b) the Debtors have no equity in the Residential Property, and (c) the Residential Property is not necessary to an effective reorganization. In support of its Motion, Bay Area represents as follows:

1. Bay Area holds the beneficial interest in an Optional Advance Note dated May 4, 2007, in the original principal amount of $350,000.00 (the "Note"). The original maturity date of the note was six months from the date of the loan, on November 4, 2007. In November, 2007, Bay Area and the Debtors extended the due date of the Note for an additional period of three months, through February 16, 2008 (the "First Three Month Extension"). In March, 2008, Bay Area and the Debtors extended the due date of the Note for an additional period of three months, through May 16, 2008 (the "Second Three Month Extension"). (Collectively the "Three Extensions".) In April, 2008, Bay Area and the Debtors extended the due date of the Note for an additional period of six months, through November 16, 2008 (the "Six Month Extension"). True and correct copies of the Note and the Three Extensions are attached to the Exhibits filed concurrently with this Motion as **Exhibit "A"**. A Deed of Trust and Assignment of Rents and Request for Special Notice made on May 4, 2007, securing the Note was recorded in the Office of the Solano County (California) Recorder on May 16, 2007 as document number 200700056129 (the "Deed of Trust"). A true and correct copy of the Bay Area Deed of Trust is attached to the Exhibits filed concurrently with this Motion as **Exhibit "B"**. The Residential Property consists of a single family home in Dixon, California.

2. With respect to Bay Area's Note and Deed of Trust, the following approximate amounts are presently due and owing through December 2009:

Unpaid Principal Balance: $326,202.17 (includes $6,080.00 in attorney

fees)

Unpaid Interest, Pre-petition: $7,477.06

Unpaid Interest, Post-petition: $23,094.26

Appraisal Fees: $1,400.00

Approximate Total Amount Due (as of December 2009): $358,173.49

2. The scheduled value of the Residential Property, according to the Debtor's most recently filed Schedules is $1,500,000.00. This value is inaccurate, and the true value of the Residential Property is $1,150,000.00, as set out in the Declaration of Lee Bartholomew, a California Certified General Real Estate Appraiser, which accompanies this Motion and whose report is attached to the Exhibits filed concurrently with this Motion as **Exhibit "C"** (the "Bartholomew Appraisal".

The Bartholomew Appraisal is further supported by the Declaration of Rick Tully, a licensed California real estate broker who prepared a Market Analysis Report with respect to the Residential Property and was filed by U.S. Bank in support of its own Motion for Relief from the Automatic Stay on November 2, 2009 (the "Tully Valuation"). The Tully Valuation places the Residential Property at $1,100,000. Bay Area respectfully requests that the Court take judicial notice of the Tully Declaration and Market Analysis Report, which is attached to the Exhibits filed concurrently with this Motion as **Exhibit "D"**.

3. As demonstrated by the Debtor's Amended Schedule "D", dated July 23, 2009 and the Debtor's Disclosure Statement, filed on September 14, 2009, the Residential Property is encumbered by various liens, totaling, at a minimum, $1,015,531.00 (but not including accrued interest or penalties arising from the various notes), which consist of (in order of priority), the following:

a. An obligation in favor of Morgan Stanley in the principal amount of $390,208.00, secured by a first deed of trust.

b. An obligation in favor of U.S. Bank National Association, N.D. ("U.S. Bank") in the unpaid principal amount of $165,279.78 and additional amounts of interest and fees (as of

September 2009) of $7,168.17, bringing the total amount up to $172,500.00, secured by a deed of trust in second position.[1]

    c. An obligation in favor of Bay Area in the amount of $350,000.00, secured by a deed of trust in third position (elevated to third position by subordination agreement entered into with Victoria Schlechter.)

    d. An obligation in favor of Victoria Schlechter in the amount of $109,000.00, secured by a deed of trust in forth position (and subordinated to fourth position by agreement with Bay Area.

The Debtors' Schedule "D" is attached to the Exhibits filed concurrently with this Motion as **Exhibit "E"** (the "Schedule D").

    4. According to a review of the Debtors' Chapter 11 Monthly Operating Reports (and the declaration of Vincent Lombardo, Secretary and General Counsel of Bay Area, filed concurrently with this Motion), no payments have been made to any of the lenders senior to Bar Area during the pendency of this case (which was filed on May 18, 2009.)

    5. The Debtors have failed to make any payments to Bay Area since February, 2009, and the Bay Area Note was fully due prior to the filing of the Debtors' petition on May 18, 2009.

    6. According to the Debtors' post-petition financial reports, no post-petition property taxes on the Residential Property been paid.

    7. Accordingly, the Debtors have zero equity in the Residential Property. Further, any equity cushion supporting Bay Area's position continues to erode each day that the first, second and third (Bay Area) priority lien holders are not paid. For this reason, Bay Area lacks adequate protection for its interest in the Residential Property.

    8. On or about September 14, 2009, the Debtors filed what purport to be a Disclosure Statement and a Plan of Reorganization. The Plan proposed to suspend payment to Bay Area, and all other secured lenders, until September 1, 2010. The Plan was unconformable on its face for a multitude of reasons, including, but not limited to the fact that the Debtor has

---

[1] U.S. Bank filed its Motion for Relief on this property on November 2, 2009, setting out its secured debt as of September, 2009.

failed to separately classify holders of secured claims. In fact, the Debtors left Bay Area out of its designation of any class, whatsoever. Nevertheless, the Debtors provided no feasible method of financing a plan of reorganization within that Plan.

9. On or about October 26, 2009, the Debtors filed an "Amended Disclosure Statement" and an "Amended/Modified Plan", both of which are facially non-approvable because of the lack of proper classifications of creditors and lack of a feasible plan of reorganization. Simply put, the Debtors do not have, and have not provided the creditors or this Court with, any evidence that a plan can be financed or approved. Attached to the Exhibits filed concurrently with this Motion as **Exhibit "F"** is a true and correct copy of the Debtors' "Amended Disclosure Statement" and an "Amended/Modified Plan".

10. On or about January 6, 2010, the Office of the United States Trustee filed its Motion to Convert or Dismiss the Case, setting out a laundry list of the inappropriate post-petition acts of the Debtors, including improper disposing of estate assets, improper payments to bankruptcy counsel, a continuing post-petition financial loss of the estate, obtaining improper and unapproved loans to the estate, and finally demonstrating that the Debtors have no reasonable likelihood of reorganizing under Chapter 11. Attached to the Exhibits filed concurrently with this Motion as **Exhibit "G"** is a true and correct copy of the OUST Motion to Convert or Dismiss the Moller Bankruptcy Case.

II.

LEGAL ANALYSIS

11 U.S.C. §362(d) provides in pertinent part:

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
(2) with respect to a stay of an act against property under subsection (a) of this section, if—

(A) the debtor does not have an equity in such property; and,
(B) such property is not necessary to an effective reorganization; ....

In the present case, the Chapter 11 Debtors are not making any payments to any secured lenders on the Residential Property (or any of their lenders secured by any real property that they own). The Debtors have no equity in the Residential Property, and the Residential Property is not necessary to effectuate reorganization.

As stated by the Bankruptcy Appellate Panel for the Ninth Circuit in *In re Aheong*, 276 B.R. 233 (9th Cir. BAP 2001), cause exists to terminate the stay when continuation of the stay harms the creditor and terminating the stay does not unjustly harm the debtor or other creditors. Terminating the stay as to the Estate does not alter or harm the Debtors, since they have no equity in the Residential Property. Terminating the stay as to the Estate does not harm either the Estate nor any of the creditors because the Debtors cannot and are not attempting to liquidate the Residential Property since all of the value is either subject to Movants' lien or the other liens on the property. The Debtors are simply living in the Residential Property for free, and according to the Plan, intend to do so for the foreseeable future.[2]

Finally, as demonstrated above, there is no equity in the Residential Property for the Estate and the Residential Property is not necessary for any effective reorganization in this Chapter 11 case.

The Bankruptcy Code provides that reasonable fees and costs are allowed as follows:

> §506(b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided under the agreement or State statute under which such claim arose–

Under the terms of the Note underlying the claim, Bay Area Financial is entitled to recover its legal fees and costs from the Debtors.

Further, under 11 U.S.C. §506(b), an oversecured creditor is entitled to add reasonable attorneys' fees to its claim where (1) it is oversecured in excess of requested attorney's fees; (2)

---

[2] The Debtors are not marketing the property, have no funds for maintenance, taxes, or insurance, and are relying on an unproven and unforeseeable sale of a business that has never made any money, has no intrinsic value, and has no serious buyer.

its fees are reasonable under federal law; and (3) the agreement underlying the claim provides for attorney's fees. *In re David N. Rausch, Inc.* 41 B.R. 833 (Bankr. D.S.D. 1984).

Based on the foregoing, Bay Area respectfully requests that the Court grant its Motion and terminate the automatic stay with respect to the Residential Property to allow Bay Area (and any of its successors or assigns) to proceed under applicable non-bankruptcy laws to enforce its remedies available under the Note, the One Year Extension, and the Deed of Trust, and award Bay Area the attorneys' fees and filing fees as set forth in this Motion. Further, Bay Area requests that the Order granting its Motion be binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of Title 11 of the United States Code, and that the 10-day stay period prescribed by Bankruptcy Rule 4001(a)(3) be waived. Respectfully submitted on this 14th day of January, 2010.

CLARKSON, GORE & MARSELLA, APLC

By: /s/ Scott C. Clarkson
Scott C. Clarkson, Esq.
Eve A. Marsella, Esq.
Christine Fitzgerald, Esq.
Counsel for Movant Bay Area Financial Corporation