FILED
January 14, 2010
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

0002348819

EXHIBIT "G"

10
JASON BLUMBERG NY State Bar No. 4055257
Trial Attorney
ANTONIA G. DARLING, State Bar No. 76190
Assistant United States Trustee
**UNITED STATES DEPARTMENT OF JUSTICE**
Office of the United States Trustee
501 "I" Street, Suite 7-500
Sacramento, CA 95814-2322
(916) 930-2100 / Fax (916) 930-2099

Attorneys for Acting United States Trustee,
Region 17, Sara L. Kistler

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | Case No. 09-29936-C-11 |
| | DC No. UST-1 |
| PAUL SANDNER MOLLER AND ROSA MARIA MOLLER, | Date: February 3, 2010<br>Time: 10:00 a.m.<br>Dept.: C |
| Debtors. / | Courtroom: 35, 6th Floor |

MOTION OF THE UNITED STATES TRUSTEE
FOR ORDER CONVERTING OR DISMISSING CASE

The Acting United States Trustee for the Eastern District of California hereby moves (the "**Motion**") the Court for an order converting this case to chapter 7 or dismissing it pursuant to Section 1112(b) of Title 11 of the United States Code (the "**Bankruptcy Code**").

The Motion is based upon the points and authorities contained herein; the record in this case; and such evidence as may be filed to supplement the Motion, or as may be introduced at the hearing on the Motion. Judicial notice is requested of all documents filed in this case, including those referenced herein, pursuant to Rule 201 of the Federal Rules of Evidence.

EXHIBIT G PAGE 116

# I. PRELIMINARY STATEMENT

This case should be dismissed or converted to a case under chapter 7 for two independent grounds.

First, dismissal or conversion is required under 11 U.S.C. § 1112(b)(1) and (b)(4)(B) because the debtors herein - Paul Sandner Moller and Rosa Maria Moller (the "**Debtors**") - have grossly mismanaged their estate and blatantly disregarded their duties to creditors and the estate. Gross mismanagement is demonstrated by the facts that the Debtors have (i) sold valuable estate assets without the Court's approval, (ii) borrowed money without the Court's approval, (iii) made loans to an affiliated corporation without the Court's approval, (iv) paid professionals without the Court's approval and (v) failed to pursue potentially valuable rent claims against a related corporation.

Second, this case must be dismissed or converted under 11 U.S.C. § 1112(b)(1) and (b)(4)(A), as well, because there is a "continuing loss to or diminution of the [Debtors'] estate and the absence of a reasonable likelihood of rehabilitation." As set forth below, the Debtors have suffered continuing cash losses in this case, and their most recently proposed plan is highly speculative and wholly infeasible.

# II. STATEMENT OF FACTS

1. The Debtors commenced this case by filing a voluntary petition for relief on May 18, 2009 (the "**Petition Date**"). The Debtors are currently debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. No official committee of unsecured creditors has been appointed in this case.

2. According to the Debtors' Amended Disclosure Statement dated October 26, 2009 (docket no. 88) (the "**Disclosure Statement**"), Debtor Paul Moller "has been in research and development relating to roadable air craft and low emission, fuel efficient engines for many years. As with space travel, much new technology has been discovered by Mr. Moller's efforts and the technology has utility in a number of related fields." See Disclosure Statement, at §

EXHIBIT G PAGE 117

III.A.

3. The technology developed by Mr. Moller is currently owned by two corporations in which Mr. Moller is the principal shareholder and chief operating officer. These corporations are Freedom Motors, Inc. ("**FM**"), a private company, and Moller International, Inc. ("**MI**"), a public company. See Disclosure Statement, at § III.A; see also Debtors' Schedule B, Item 13 (docket no. 1).

4. The Debtors own, among other things, commercial property located at 1222 Research Park Drive in Davis California (the "**Business Parcel**"). See Debtors' Schedule A (docket no. 1). The Business Parcel includes "considerable land, a sizable office area and connected warehouse manufacturing area." See Disclosure Statement, at § III.B. The Debtors claim that "[p]roperly marketed and given the improving condition, the [Business Parcel] might reasonable [sic] sell for $7,500,000.00." See id. The Business Parcel is subject to secured claims in the amount of $4,000,000.00. See Debtors' Schedules A and D (docket no. 1).

5. MI leases the Business parcel from the Debtors pursuant to a long-term lease. See Debtors' Schedule G (docket no. 1). However, the Debtors' monthly operating reports reveal that the Debtors are not collecting any rent from MI on account of this lease.[1]

6. The Debtors monthly operating reports indicate several other disturbing developments in this case:

7. First, the Debtors have borrowed at least $29,000 since the inception of this case. These borrowings consist of (i) a 25,000 loan from Paul Gartz in May of 2009 and (ii) a $4,000 loan from Jennifer Moller in July of 2009. See Debtors' monthly operating reports for May (docket no. 21) and July (docket no. 68). The Debtors did not obtain the Court's approval to obtain these loans, and the terms of these loans have not been disclosed.

8. Second, the Debtors have sold substantial stock holdings (presumably in MI or FM, as

---

[1] According to the Debtors, MI owes them $1,715,000 on account of delinquent lease payments. See Disclosure Statement, § III.B. This amount is in addition to $3,000,000 on account of outstanding loans and $875,000 on account of accrued wages. See id.

-3-

EXHIBIT G PAGE 118

they are the only stock interests disclosed by the Debtors on their Schedule A), netting $101,911.00 of proceeds. See Debtors' monthly operating reports for August (docket no. 73), September (docket no. 86) and October (docket no. 102). The Debtors did not obtain the Court's approval to engage in these sale transactions, and the terms of these sales have not been disclosed.

9. Third, the Debtors have made loans to MI in the aggregate amount of $113,200.00 since the Petition Date. See Debtors' monthly operating reports for May (docket no. 21), June (docket no. 55), July (docket no. 68), August (docket no. 73), September (docket no. 86), October (docket no. 102) and November (docket no. 110). The Debtors did not obtain the Court's approval to make these loans, and the terms of these loans have not been disclosed.

10. Fourth, after the Petition Date, the Debtors have made payments of (i) $2,000 to the Debtors' counsel and (ii) $900 to the accounting firm Carbahal and Company See Debtors' monthly operating reports for May (docket no. 21) and July (docket no. 68). Neither of these payments was approved by the Court. In fact, the Debtors have never sought to retain Carbahal and Company pursuant to Bankruptcy Code Section 327.

11. Finally, as set forth on their operating reports, the Debtors have generated only a minimally positive cash flow of $7,755.32 during the course of this case, which amount is calculated as follows:

| | |
|---|---|
| May 2009 | $3,295.95 |
| June 2009 | ($373.39) |
| July 2009 | $110.12 |
| August 2009 | $3,813.53 |
| September 2009 | $7,032.62 |
| October 2009 | ($5,940.34) |
| November 2009 | ($183.17) |
| | $7,755.32 |

-4-

EXHIBIT G PAGE 119

1       12. Unfortunately, the Debtors' financial performance during the course of this case is far worse than the figures in the immediately preceding paragraph indicate. That is because those figures include the receipt of $29,000 from loans that the Debtors obtained from Paul Gartz and Jennifer Moller without the Court's approval. If those unauthorized borrowings are not taken into account, the Debtors have actually sustained cash losses in the amount of $21,244.68 during this case ($7,755.32-$29,000).

### III. POINTS AND AUTHORITIES

**A.** <u>**"Cause" Exists to Convert or Dismiss this Case Pursuant to Section 1112(b) of the Bankruptcy Code.**</u>

Dismissal or conversion of a case under Chapter 11 is governed by Section 1112 of the Bankruptcy Code. Bankruptcy Code Section 1112 provides in relevant part that:

> [O]n the request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court <u>shall</u> convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, <u>whichever is in the best interests of creditors and the estate</u>, if the movant establishes cause.

11 U.S.C. § 1112(b)(1) (emphasis added). Thus, if "cause" has been established, a court must ordinarily convert or dismiss a chapter 11 case, unless the court finds that there are "unusual circumstances." See id.; see also In re Gateway Access Solutions, Inc., 374 B.R. 556, 560 (as amended by BAPCPA, "§ 1112 limits the Court's discretion to refuse to dismiss or convert a Chapter 11 case upon a finding of cause").

"Cause" is not defined in the Bankruptcy Code. However, Bankruptcy Code Section 1112(b)(4) sets forth a list of 16 grounds that do constitute "cause." See 11 U.S.C. § 1114(b)(4)(A)-(P); see also In re Gateway Access Solutions, Inc., 374 B.R. at 560. This list is not exhaustive, and a case may be dismissed or converted for causes other than those specifically identified in Section 1112(b)(4). See, e.g., In re AmeriCERT, Inc., 360 B.R. 398, 401 (Bankr. D.N.H. 2007) ("The list is not exhaustive ... a case may be dismissed for other causes, such as bad faith or if the petition does not serve a bankruptcy purpose."); In re Jayo, 2006 WL 2433451,

EXHIBIT G PAGE 120

at *6 (Bankr. D. Idaho July 28, 2006) ("In [the Ninth] Circuit, the court has discretion to consider alleged causes not specifically listed in § 1112(b).").

In this case, as set forth in greater detail below, "cause" exists to dismiss or convert this case under (i) <u>Section 1112(b)(4)(B)</u>, due to the Debtors' gross mismanagement of their estate and (ii) <u>Section 1112(b)(4)(A)</u>, due to the continuing loss to or diminution of the Debtors' estate and the absence of a reasonable likelihood of rehabilitation.

### 1. **The Debtors Have Grossly Mismanaged Their Estate.**

11 U.S.C. § 1112(b)(4)(B) includes as a "cause" for conversion or dismissal of a case under § 1112(b)(1) a debtor's "gross mismanagement" of its estate.

A debtor-in-possession enjoys a plethora of rights and powers that it would not possess in a case under Chapter 7, including the right to remain in control of its assets. These rights and powers "come with certain responsibilities." <u>See</u> <u>In re Gateway Access Solutions, Inc.</u>, 374 B.R. at 565. Most notably, a debtor-in-possession owes a fiduciary duty to its creditors and must act in accordance with the provisions of the Bankruptcy Code. <u>See</u> <u>Biltmore Assoc., LLC v. Twin City Fire Ins. Co.</u>, 572 F.3d 663, 673 (9th Cir. 2009) ("Visitalk became the debtor in possession of the bankruptcy estate, empowered to act as a trustee and required to act as a fiduciary for its creditors").

Here, the Debtors have blatantly disregarded their obligations under the Bankruptcy Code - as well as their duties to creditors - in numerous ways. More specifically, the Debtors have (i) sold estate assets without the Court's approval, in contravention of Bankruptcy Code Section 363(b), (ii) paid professionals without the Court's approval, in contravention of Bankruptcy Code Sections 330 and 331, (iii) made loans to an affiliate (MI) without the Court's approval, in contravention of, <u>inter alia</u>, Bankruptcy Code Section 363(b) and (iv) obtained loans for themselves without the Court's approval, in contravention of Bankruptcy Code Section 364(b).

The United States Trustee respectfully submits that these unauthorized actions plainly constitute "gross mismanagement." <u>See, e.g.</u>, <u>In re 210 West Liberty Holdings, LLC</u>, 2009 WL

-6-

EXHIBIT G PAGE 121

1522047, at *6 (Bankr. N.D. W. Va. May 29, 2009) (debtor's failure to fully and timely disclose loan or obtain court approval constituted gross mismanagement); In re Gateway Access Solutions, Inc., 374 B.R. at 566 ("The Court finds that entering into unapproved, unauthorized corporate borrowings on 'oral terms' is evidence of gross mismanagement of the estate.").[2]

In addition, the Debtors have failed to pursue their sizable claims against MI (their affiliate) for unpaid rent arising from MI's lease of the Business Parcel. The United States Trustee respectfully submits that this failure also constitutes "gross mismanagement." See, e.g., In re 210 West Liberty Holdings, LLC, 2009 WL 1522047, at *6 (The debtor's refusal to pursue the collection of a rent obligation owed to him by his friends "constitute[d] gross mismanagement of the estate").

### 2. There Is a Continuing Loss or Diminution to the Estate and No Reasonable Likelihood of Rehabilitation.

11 U.S.C. § 1112(b)(4)(A) includes as a "cause" for conversion or dismissal of a case under Section 1112(b)(1) a substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation.

The first element of the test under Section 1112(b)(4)(A) is whether there is a "substantial or continuing loss to or diminution of the estate." This element is satisfied where a debtor has a continuing, negative cash flow post-petition. See In re Schriock Construction, Inc., 167 B.R. 569, 575 (Bankr. D.N.D. 1994) ("This element can be satisfied by demonstrating that the debtor ... maintained a negative cash flow position after the entry of the order for relief."). This element may also satisfied where a debtor permits valuable estate assets to be diminished or dissipated. See, e.g., In re Emergystat of Sulligent, Inc., 2008 WL 597613, at *9 (Bankr. E.D. Tenn. Feb. 29, 2008) (finding that there was continuing loss to the estate, where, among other things, debtor (i) failed to collect their accounts receivable and (ii) permitted affiliate to setoff rent obligations to

---

[2] While the Debtors did disclose the mere existence of the transactions in question on their monthly operating reports, the Debtors have not disclosed the terms of these transactions. At this point, it is not even clear if these transactions - particularly the loan transactions - were entered into orally or whether there is proper documentation.

-7-

third-party against note owed by third party to debtor).

Here, the first element of the test under Section 1112(b)(4)(A) is satisfied because, as set forth above and as reflected in the Debtors' monthly operating reports, the Debtors have suffered a negative cash flow during this case of $21,244.68.[3] Morever, the Debtors have permitted valuable estate assets to be diminished or dissipated by (i) not collecting rent payments due to them from MI on account of the lease of the Business Parcel and (ii) making unauthorized loans to MI.

The second element of the test under Bankruptcy Code Section 1112(b)(4)(A) requires only the absence of a "reasonable likelihood of rehabilitation." It does not require the moving party to show that the debtor could not conceivably confirm a plan, but rather that the debtor's business prospects do not "justify continuance of the reorganization effort." 7 Collier on Bankruptcy § 1112.04[5][a][ii] (15th ed. 2009); see also In re Loop Corp., 379 F.3d at 516-17 ("Courts have consistently understood 'rehabilitation' to refer to the debtor's ability to restore the viability of its business.").

In this case, however, the Debtors' proposal for rehabilitation is contained in their Amended Plan of Reorganization dated October 27, 2009 (docket no. 90) (the "**Plan**"). Thus, whether there is a "reasonable likelihood of rehabilitation" of the Debtors necessarily turns on whether the Debtors' Plan is feasible. See In re Schriock Constr. Co., 167 B.R. at 576 ("This finding in turn requires an assessment of the feasibility of the debtor's proposal for rehabilitation, as contained in the first modified plan of reorganization together with the disclosure statement ...."); see also In re Wahlie, 417 B.R. 8, 12 (Bankr. N.D. Ohio 2009) ("Although not dispositive on this element, a useful indicator regarding a debtor's chance for rehabilitation considers

---

[3] As set forth above, this figure does not take into account the $29,000 that the Debtors received on account of their unauthorized borrowings in this case. Consideration of these borrowings would artificially inflate the Debtors' financial performance and, thus, the borrowings are properly excluded. See, e.g., In re Schriock, 167 B.R. at 573 (in considering whether debtor was experiencing continuing losses, court did not consider shareholder loans because they "artificially inflated" and did not provide a "true picture" of the debtor's financial performance).

-8-

EXHIBIT G PAGE 123

whether the debtor will be in a position to have a Chapter 11 plan of reorganization confirmed.").

The Debtors' Plan calls for them to satisfy the claims of their secured creditors in full by way of monthly payments. However, these payments would not commence until September of 2010.[4] That is because the Plan is entirely dependent upon the occurrence of at least one of three events: (i) the licensing of the Debtors' technology; (ii) the sale of the Business Parcel, subject to a leaseback to MI; and/or (iii) the sale of shares of FM and MI. See Disclosure Statement, VIII.A. Unfortunately, there appear to be no firm commitments in place at this time and the likelihood of the consummation of these transactions is, to the say the least, highly speculative.[5]

As such, the United States Trustee respectfully submits that the Debtors' Plan is patently unconfirmable, and, as a result, there is no reasonable likelihood of the rehabilitation of the Debtors. See, e.g., In re Pizza of Hawaii, Inc., 761 F.2d 1374, 1382 (9th Cir. 1985) ("'The purpose of section 1129(a)(11) is to prevent confirmation of visionary schemes which promise creditors and equity security holders more under a proposed plan than the debtor can possibly attain after confirmation.'"); In re Clarkson, 767 F.2d 417, 420 (8th Cir. 1985) ("Sincerity, honesty and willingness are not sufficient to make the plan feasible and neither are visionary promises."); In re A Partners, LLC, 344 B.R. 114, 126 (Bankr. E.D. Cal. 2006) ("A chapter 11 plan cannot be based upon a visionary scheme"); In re Pelham Assoc., 134 B.R. 700, 701 (Bankr. D.R.I. 1991) (confirmation denied where debtor's proposed financing was "pure pie in the sky").

---

[4] With respect to unsecured claims, the Debtors' Plan provides only that the holders of such claims shall receive their pro rata payment of monies "after the sale of the Business Parcel has closed" and creditors enjoying higher priority (including secured creditors) have been paid in full. See Disclosure Statement, § VIII.D. Thus, the holders of unsecured claims would not expect to receive distributions until long after September of 2010, if at all. All the while, the Debtors would remain in possession and control of their assets. Based on the Debtors' claim in their Plan that the value of the Business Parcel exceeds the amount of the secured debt thereon by several millions of dollars, unsecured creditors may well fare better in a chapter 7 liquidation in which the Business Parcel could be sold without a leaseback requirement or any similar restrictions that benefit the Debtors.

[5] The Debtors' Disclosure Statement indicates that there may be some interest on the part of third parties in pursuing licensing transactions. However, there is no indication that any party has made a binding commitment to enter into such a transaction or is doing anything more than preliminary due diligence. See Disclosure Statement, III.A and B, VIII.A.

EXHIBIT G PAGE 124

C. **Conversion of this Case to One under Chapter 7 Is in the Best Interests of Creditors.**

Once it has been determined that there is "cause" to dismiss or convert a case to one under Chapter 7 pursuant to Bankruptcy Code Section 1112(b), a "choice must be made between conversion and dismissal based on the 'best interests of creditors and the estate.'" See, e.g., In re Nelson, 343 B.R. 671, 674 (B.A.P. 9th Cir. 2006) (internal citations omitted).

In this case, there could potentially be substantial assets available for administration, including stock in FM and MI, claims against MI and equity in the Business Parcel. Accordingly, the United States Trustee respectfully submits that conversion, as opposed to dismissal, is in the best interests of creditors.

## IV. CONCLUSION

Based on the foregoing, the United States Trustee requests that this Court enter an order converting this case to one under Chapter 7 for "cause" pursuant to Bankruptcy Code Section 1112(b). Alternatively, this case should be dismissed.

Executed at Sacramento, California on January 6, 2010.

Respectfully submitted,

/s/ Jason Blumberg
**JASON BLUMBERG**
Attorney for the
Acting United States Trustee
Direct Phone: (916) 930-2076
E-mail: jason.blumberg@usdoj.gov

EXHIBIT G PAGE 125

2
JASON BLUMBERG NY State Bar No. 4055257
Trial Attorney
ANTONIA G. DARLING, State Bar No. 76190
Assistant United States Trustee
**UNITED STATES DEPARTMENT OF JUSTICE**
Office of the United States Trustee
501 "I" Street, Suite 7-500
Sacramento, CA 95814-2322
(916) 930-2100 / Fax (916) 930-2099

Attorneys for Acting United States Trustee,
Region 17, Sara L. Kistler

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | Case No. 09-29936-C-11 |
| **PAUL SANDNER MOLLER AND ROSA MARIA MOLLER,** | DC No. UST-1 |
| | Date: February 3, 2010 |
| | Time: 10:00 a.m. |
| | Dept.: C |
| Debtors. | Courtroom: 35, 6th Floor |

**NOTICE OF MOTION OF THE UNITED STATES TRUSTEE FOR
ORDER CONVERTING OR DISMISSING CASE**

TO THE HONORABLE CHRISTOPHER M. KLEIN, U.S. BANKRUPTCY JUDGE; THE DEBTORS; DEBTORS' COUNSEL AND OTHER PARTIES IN INTEREST:

The Acting United States Trustee has filed papers with the court to ask the court to convert this case to chapter 7 or to dismiss it. <u>Your rights may be affected</u>. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)

If you do not want the court to grant the motion, or if you want the court to consider your views on the motion, you or your attorney must do the following no later than **January 20, 2010**:

-1-

EXHIBIT G PAGE 12b

(1) File an answer, explaining your position, at:

> U.S. Bankruptcy Court
> 501 "I" Street, Suite 3-200
> Sacramento, CA 95814

If you mail your response to the court for filing, you must mail it early enough so the court will receive it on or before the date stated above.

(2) You must also mail a copy to:

> Office of the United States Trustee
> 501 "I" Street, Suite 7-500
> Sacramento, CA 95814-2322

You or your attorney must also attend the hearing scheduled to be held on **February 3, 2010**, at 10:00 a.m., in Courtroom 35 of the United States Bankruptcy Court, 501 "I" Street, 6th Floor, Sacramento, CA 95814.

If you or your attorney do not appear at the hearing, the court may decide that you do not oppose the relief sought in the motion and may enter an order granting that relief.

**FAILURE TO RESPOND TO THIS MOTION BY JANUARY 20, 2010, MAY RESULT IN THE GRANTING OF THE MOTION WITHOUT FURTHER OPPORTUNITY FOR YOU TO RESPOND OR ADDRESS THE COURT. AS PROVIDED IN THE LOCAL RULES, THE COURT MAY RESOLVE MOTIONS WITHOUT ORAL ARGUMENT IN THE EVENT NO TIMELY OPPOSITION IS FILED.**

Executed at Sacramento, California on January 6, 2010.

> Respectfully submitted,
>
> /s/ Jason Blumberg
> **JASON BLUMBERG**
> Attorney for the
> United States Trustee
>
> E-Filer: Jason Blumberg
> Direct Phone: (916) 930-2076
> E-Mail: jason.blumberg@usdoj.gov

EXHIBIT G PAGE 127