FILED

January 14, 2010

CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

0002348817

EXHIBIT "F"

1   WILLIAM S. BERNHEIM  SBN 56555
  BERNHEIM, GUTIERREZ & McCREADY

2   255 North Lincoln Street
  Dixon, CA 95620

3   Ph.: (707) 678-4447
  Fax: (707) 678-0744

4   e-mail: law@bernheimlaw.net

5   Attorneys for Debtors
  PAUL SANDNER MOLLER and

6   ROSA MARIA MOLLER

7

8            UNITED STATES BANKRUPTCY COURT

9            EASTERN DISTRICT OF CALIFORNIA

10            SACRAMENTO DIVISION

11

12   In re                     Bankruptcy Case No. 2009-29936

13   PAUL SANDNER MOLLER       Chapter 11

14   and ROSA MARIA MOLLER,     **MOLLER'S AMENDED DISCLOSURE STATEMENT**

15                      **FOR THE AMENDED PLAN OF**
          Debtors          **REORGANIZATION, DATED OCTOBER 27, 2009**

16

17

18          **AMENDED DISCLOSURE STATEMENT FOR THE**

19      **AMENDED PLAN OF REORGANIZATION, DATED OCTOBER 27,2009**

20      11 U.S.C. § 1125(b) prohibits solicitation of any acceptances or rejections of a Plan of

21   Reorganization unless a copy or a summary of the plan is accompanied by a copy of a Disclosure

22   Statement that has been approved by the Bankruptcy Court.

23   **I.**     **INTRODUCTION**

24      Paul Sandner Moller and Rosa Maria Moller provide this Disclosure Statement to all of their

25   known creditors pursuant to 11 U.S.C § 1125 of the United States Bankruptcy Code (the "Bankruptcy

BERNHEIM
GUTIERREZ
&
McCREADY

255 NORTH
LINCOLN
STREET

DIXON
CA
95620

PHONE
(707) 678-4447

FAX
(707) 678-0744

EXHIBIT  F  PAGE  66

1 Code")[1]. The purpose of this Disclosure Statement is to provide creditors adequate information of a kind

2 and in sufficient detail, as far as reasonably practicable, so that the creditors may make an informed

3 judgment about the Plan of Reorganization (also referred to as the "Plan"), a copy of which is attached

4 hereto and marked as Exhibit "A".

5 Except where specifically stated otherwise, portions of this Disclosure Statement describing the

6 Debtors and Plan have been prepared from: (1) schedules filed by the Debtor; (2) financial statements as

7 prepared by the Debtors; and (3) certain records of operation as prepared and retained by the Debtors

8 internally.

9 This Disclosure Statement contains information that may influence your decision to accept or

10 reject the Debtor's proposed Plan. Please read this document with care. The only representations that are

11 authorized by the Debtors concerning the value of the Debtors assets or the distributions to be made

12 pursuant to the Plan are the representations contained in this Disclosure Statement.

13 The financial information contained in this Disclosure Statement has not been subjected to an

14 audit by an independent certified public accountant. For that reason, the Debtors are unable to warrant or

15 represent that information contained in this Disclosure Statement is without any inaccuracy. To the extent

16 practicable, the information has been prepared from the Debtors financial books and records and great

17 effort has been made to ensure that all such information is fairly representative.

18 **II.    DEFINITIONS**

19 For purposes of this Disclosure Statement, except as expressly provided or unless the context

20 otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in

21 Article II of this Disclosure Statement. Any term used in this Disclosure Statement that is not defined

22 herein, but is defined in the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure (the

23 "Bankruptcy Rules"), shall have the meaning ascribed to that term in the Bankruptcy Code or the

24 Bankruptcy Rules. Whenever the context requires, such terms shall include the plural as well as the

---

[1] Unless otherwise noted all references to "Code § ___" shall refer to Title 11 of the United States Code, as amended.

BERNHEIM
GUTIERREZ
&
MCCREADY

255 NORTH
LINCOLN
STREET

DIXON
CA
95620

PHONE
(707) 678-4447

FAX
(707) 678-0744

singular number, the masculine gender shall include the feminine, and the feminine gender shall include the masculine.

A. **Administrative Claim** means a Claim for payment of an administrative expense of a kind specified in 11 U.S.C. § § 503(b) or 1114(e)(2)[2] and entitled to priority pursuant to Bankruptcy Code § 507(a)(1), including, but not limited to , (a) the actual, necessary costs and expenses, incurred after the Petition Date, of preserving the bankruptcy estate and operating the Debtor's business, (b) all Allowed Claims of professionals appointed by the Bankruptcy Court, (c) all fees and charges assessed against the bankruptcy estate under 28 U.S.C. § 1930, and (d) all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court under Bankruptcy Code §546(c)(2)(A). Administrative Claims are classified by the Plan in Class 3.

B. **Agricultural Parcel** means a 48 acre parcel of real property located at 9341 Currey Road, Dixon CA 95620 and adjacent to Debtors' Residence Parcel. The Agricultural Parcel is the subject of an adversary complaint in this Bankruptcy in which Edward and Dana Foss ("the Fosses") and Gregory A. and Jennifer House ("the Houses") are each contending they purchased such parcel for $1,250,000.00 from the Debtors.

C. **Agricultural 1st Note** or **WaMu Note** means the Promissory Note executed by and Washington Mutual ("WaMu") as creditor and the Debtors in the principle amount of $308,924.00 secured by a Deed of Trust in first position on the ranch property known as 9341 Currey Rd, Dixon CA 95620 and referred to in this Disclosure Statement as the ("Agricultural Parcel") .

D. **Agricultural 2nd Note** or **Foss 2nd Note** means the Promissory Note executed by and between Ed Foss and Dana Foss ("the Fosses") as creditors and the Debtors in the principle amount of $225,000.00 secured by a Deed of Trust in second position on the Agricultural Parcel.

---

[2] Unless otherwise noted all references to "Code § ___" shall refer to Title 11 of the United States Code, as amended.

BERNHEIM
GUTIERREZ
&
MCCREADY

255 NORTH
LINCOLN
STREET

DIXON
CA
95620

PHONE
(707) 678-4447

FAX
(707) 678-0744

EXHIBIT F PAGE 68

E. **Agricultural 3rd Note** or **Note World** or **Foss 3ʳᵈ Note** or **Capitol Region Equities Note** means the Promissory Note executed by and Capitol Regions Equities, LLC (Ed Foss and Dana Foss are the real parties in interest of this note) as creditor and the Debtors in the principle amount of $350,000.00 secured by a Deed of Trust in 3ʳᵈ position on the Agricultural Parcel.

F. **Allowed Claims** means a Claim or any portion thereof (a) that has been allowed by a Final Order, or (b) as to which , on or by the Effective Date, *(i)* no proof of claim has been filed with the Bankruptcy Court and *(ii)* the liquidated and non-contingent amount of which is listed in the Schedules filed in the Bankruptcy Court, other than a Claim that is listed in the Schedules at zero, in an unknown amount, or as disputed, or (c) for which a proof of claim in liquidated amount has been timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, any Final Order of the Bankruptcy Court or other applicable bankruptcy law, and as to which either *(i)* no objection to its allowance has been filed within the periods of limitation fixed by the Plan, the Bankruptcy Code or by any order of the Bankruptcy Court or *(ii)* any objection to its allowance has been settled or withdrawn, or has been denied by a Final Order, or (d) that is expressly allowed in a liquidated amount in this Plan.

G. **Allowed Secured Claims** means an Allowed Claim that is at least partially secured by property owned by the Debtor.

H. **Ballots** mean each of the ballot forms distributed with the Disclosure Statement to holders of the Impaired Claims entitled to vote as specified in Section IV of the Plan, in connection with the solicitation of acceptances of the Plan.

I. **Bankruptcy Code** means the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, as codified in Title 11 of the Untied States Code, 11 U.S.C. §§ 101-1532, as now in effect or hereafter amended.

J. **Bankruptcy Court** means the United States Bankruptcy Court for the Eastern District of California, Sacramento Division, or such other court as may have jurisdiction over the above-captioned Chapter 11 case.

BERNHEIM
GUTIERREZ
&
MCCREADY

255 NORTH
LINCOLN
STREET

DIXON
CA
95620

PHONE
(707) 678-4447

FAX
(707) 678-0744

EXHIBIT  PAGE 

K.     **Bankruptcy Rule** means the Federal Rules of Bankruptcy Procedure as amended and the Local Rules of the Bankruptcy Court, as applicable to the Chapter 11 case or proceedings therein, as the case may be.

L.     **Bar Dates** means the date(s), if any, designated by the Bankruptcy Court as the last date for filing Proofs of Claim or Interest against the Debtors.

M.     **Business Parcel** means real property located at 1222 Research Park Dr., Davis CA 95618 which is the operating headquarters of Freedom Motors, Inc. and Moller International, Inc. and location of the tooling and parts associated with the technology that is being marketed.

N.     **Business 1st Note** or **Exchange Bank Note** means the Promissory Note executed by and Exchange Bank as creditor and the Debtors in the principle amount of $3,300,000 secured by a Deed of Trust in first position on the Business Parcel.

O.     **Business 2nd Note** or **Sterling Note** means the Promissory Note executed by and between Sterling Pacific Financial ("Sterling Pacific") as creditor and the Debtors in the principle amount of $700,000.00 secured by a Deed of Trust in 2nd position on the Business Parcel

P.     **Chapter 11** means Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 1101, et seq.

Q.     **Chile Parcel** means a residence in Chile which is the home of Mrs. Moller's aunt, Lucia Napoli Cosmeli, who in exchange for being supported for the rest of her life including payment of a mortgage on the home leaves the residence to Mrs. Moller upon her death. The property is located at 172 Avenue Sporting, Vina Del Mar, Chile, South America 2560989.

R.     **Chile 1st Note** or **Cosmeli Note** means the Promissory note executed by and between Lucia Napoli Cosmeli ("Cosmeli") and the Debtors, the claim amount being $16,458.00 and secured by Deed of Trust in 1st position on the Chile Parcel.

S.     **Claim** means: (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, which right arose or accrued prior to the date of confirmation, or; (b) a right to an equitable remedy for breach of performance, if such breach gives rise to a right of payment whether or not

BERNHEIM
GUTIERREZ
&
MCCREADY

255 NORTH
LINCOLN
STREET

DIXON
CA
95620

PHONE
(707) 678-4447

FAX
(707) 678-0744

such right to an equitable remedy is reduced to a judgment, fixed, contingent matured, unmatured, disputed, undisputed, where such right arose or accrued prior to confirmation, or (c) a claim arising under 11 U.S.C. § 502(g).

T.      **Class** means a category of holders of Claims or Interests, as described in Section III of the Plan.

U.      **Confirmation** means entry by the Bankruptcy Court of the Confirmation Order on the Bankruptcy Court's docket.

V.      **Confirmation Date** means the date of entry of the Confirmation Order on the Bankruptcy Court's Docket.

W.      **Confirmation Hearing** means the hearing to consider confirmation of the Plan under Code § 1128.

X.      **Confirmation Order** means the order entered by the Bankruptcy Court confirming the Plan.

Y.      **Court** means The Untied States Bankruptcy Court for the Eastern District of California, Sacramento Division, which has jurisdiction in this case.

Z.      **Disclosure Statement** means this written Disclosure Statement that relates to the Plan, as amended, supplemented, or modified from time to time, and that is prepared and distributed in accordance with Bankruptcy Code § 1125 and Bankruptcy Rule 3018.

AA.     **Effective Date** means the date on which the order confirming the Plan becomes a Final Order.

BB.     **Final Order** means eleven (11) days after an order is entered on the Bankruptcy Court's docket, but if that day falls on a weekend or legal holiday then the following judicial date, with no appeal having been filed in relation to such order, and such order has not been stayed.

CC.     **General Priority Claim** means a claim entitled to priority treatment pursuant to Section 507(a) of the Bankruptcy Code other than (i) a Tax Claim entitled to priority pursuant Section 507(a)(8) of the Bankruptcy Code, and (ii) an Administrative Claim entitled to priority pursuant Section 507(a)(2) of the Bankruptcy Code. General Priority Claims are classified under the Plan as Class 4.

BERNHEIM
GUTIERREZ
&
MCCREADY

255 NORTH
LINCOLN
STREET

DIXON
CA
95620

PHONE
(707) 678-4447

FAX
(707) 678-0744

6

DD. **General Unsecured Claim** means a Claim that is not a Tax Claim, an Administrative Claim, a General Priority Claim, a Secured Claim, a claim of an insider, or equity holders. General Unsecured Claims are classified by the Plan in Class 5.

EE. **Impaired** means, when used with reference to a Claim or interest, a Claim or interest that is impaired within the meaning of Bankruptcy Code § 1124.

FF. **Petition Date** means May 18, 2009, the date that Paul Sandner Moller and Rosa Maria Moller filed their Voluntary Petition for relief commencing the above-captioned bankruptcy case.

GG. **Plan** means the Plan of Reorganization attached hereto as Exhibit "A" and any amendments thereto.

HH. **Prime Rate** means the prime rate published in the Wall Street Journal on June 1st of each year.

II. **Proof of Claim** means the proof of claim that must be filed by a holder of an Impaired Claim by the Bar Date.

JJ. **Reorganization** means the case for reorganization of Paul Sandner Moller and Rosa Maria Moller commenced by the Voluntary Petition on or about May 18, 2009 now pending in the Bankruptcy Court entitled, <u>In re Paul Sandner Moller and Rosa Maria Moller</u>, Case No. 09-29936

KK. **Reorganized Debtors** mean Paul Sandner Moller and Rosa Maria Moller after the Effective Date.

LL. **Residence Parcel** means a multi-acre parcel of real property located at 9350 Currey Road, Dixon CA 95620, which is the debtors' home and includes an orchard of almond trees from which nuts are used to make almond butter which is sold by the debtors.

MM. **Residence 1<sup>st</sup>Note** or **Morgan Stanley Note** means the Promissory Note executed by and between Morgan Stanley ("Bank1") as creditor and the Debtors in the principle amount of $390,208.00 secured by a Deed of Trust in 1st position on the Residence Parcel.

NN. **Residence 2nd Note** or **US Bank Note** means the Promissory Note executed by and between U.S. Bank ("Bank2") as creditor and the Debtors in the principle amount of $166,323.00 secured by a Deed of Trust in 2nd position on the Residence Parcel.

BERNHEIM
GUTIERREZ
&
MCCREADY

255 NORTH
LINCOLN
STREET

DIXON
CA
95620

PHONE
(707) 678-4447

FAX
(707) 678-0744

7

OO.    **Residence 3rd Note** or **<u>Bay Area Financial Note</u>** means the Promissory Note executed by and between Bay Area Financial ("Bay Area") as creditor and the Debtors in the principle amount of $312,218.00 secured by a 1st on their home.

PP.    **Residence 4th Note** or **<u>Schlechter Note</u>** means the Promissory Note executed by and between Victoria Schlechter as creditor and the Debtors in the principle amount of $109,000.00 secured by a Deed of Trust in 4th position on the Residence Parcel.

QQ.    **Schedules** mean the Schedules filed by the Debtors in the above-captioned case.

RR.    **Secured Claim** means a Claim defined as a secured claim under Section 506(a) of the Bankruptcy Code. Secured Claims are classified by the Plan in Class 1.

SS.    **Tax Claim** means a claim entitled to priority pursuant to Section 507(a)(8) of Bankruptcy Code. Tax Claims are classified by the Plan in Class 2.

TT.    **Tax Claim Rate** means the rate of interest, to be determined by the bankruptcy Court at the Confirmation Hearing, that, when applied to the amount of a Tax Claim paid in installments as provided herein, will result in such installments being of an aggregate value, as of the Effective Date, Equal to the Allowed Tax Claim, consistent with the requirements of Section 1129(a)(9)(C). The Tax Claim Rate shall be determined in accordance with the provisions of Section III(B)(3) below.

UU.    **Vehicle Note** means the Promissory Note executed by and between BMW Bank of North America ("BMW") as creditor and the Debtors in the claim amount of $5,013.73 and secured by the 2002 BMW vehicle.

VV.    **Voting Deadline** means the voting deadline for voting to accept or reject t the Plan, as determined by the Bankruptcy Court

## III.    <u>HISTORY OF DEBTORS</u>

A.    History

Paul Moller has been in research and development relating to roadable air craft and low emission, fuel efficient engines for many years.  As with space travel, much new technology has been discovered by Mr. Moller's efforts and the technology has utility in a number of related fields.  To finance this technology development, Paul has gone deeply in debt but is on the verge

BERNHEIM
GUTIERREZ
&
MCCREADY

255 NORTH
LINCOLN
STREET

DIXON
CA
95620

PHONE
(707) 678-4447

FAX
(707) 678-0744

of entering agreements that should solve all the financial issues for years to come. The technology is owned by two corporations in which Paul Moller is the principal shareholder and chief operating officer. These corporations are Freedom Motors, Inc. ("FM"), a private company and Moller International, Inc. ("MI"), a public company. There are presently a number of bidders for parts of the technology. What is needed is a bit more time for the economy to stabilize and for the bidders to recognize there is a limit to the pressure on Paul.

Information about the bidders includes (1) Rotary Echoes, LLC ("RE") Meridian, ID, Al King, Chairman. RE is interested in producing and distributing our Rotapower engine. RE claims to have the funding in place to acquire the rotary engine assets of Freedom Motors. At this time we are putting together a final agreement and seem to have resolved most issues. With a final binding MOU, RE is required to make an advance payment of $2.5 million. FM expects to determine within the next 30 days whether RE can perform under the emerging MOU.

(2) Future Engine Systems ("FES"), Sebring, FL, Dr. Shawn Okun, President. FES is interested in producing and distributing our Rotapower engine. FES has advanced $475,000 (unsecured) as a measure of their interest. Once they have production funding secured ($30 million) they will provide a $2.5 million initial payment on a $7.5 million license fee. Freedom Motors is working with Heritage Corporate Services, Inc (our investor relations firm) to secure the funding FES needs. Both FES and Heritage are optimistic that funding will occur shortly. Heritage only recently joined the on-going fund raising effort by FES. FES has raised part of the total funding required, but must have the full amount committed before they can release additional funds to Freedom Motors.

(3) Defense Advanced Research Projects Agency (DARPA), Washington, D.C., Dr. Stephen Waller, Program Manager. Dr. Waller is championing a program within DARPA that would provide sufficient funds to Moller International to prepare for and deliver a demonstration of its Skycar volantor in operation. The gated $5 million program has earmarked $2.5 million for the initial military demonstration with an additional $2.5 million available for follow-up engineering the required effort to accomplish a successful tether-free flight. To help in

BERNHEIM
GUTIERREZ
&
MCCREADY

255 NORTH
LINCOLN
STREET

DIXON
CA
95620

PHONE
(707) 678-4447

FAX
(707) 678-0744

MOLLER AMENDED DISCLOSURE STATEMENT 10/27/09

EXHIBIT F PAGE 74

1  his lobbying efforts, Dr. Waller requested testimonials on the need for the Skycar volantor in

2  current and anticipated military operations. The outpouring of support has been remarkable.

3        B.  Assets

4         The assets of the Debtors include three pieces of real property, shares of stock in two

5  corporations and units in a limited partnership. The assets also include a car, a tv and

6  agricultural inventory, farm equipment and a remainder interest in a property in Chile. The latter

7  assets are of insufficient value to play a significant role in a business reorganization or other

8  outcome.

9         The real property includes a residence valued at $1,500,000 on which approximately

10  $1,000,000 is owed on multiple loans. There is an adjoining primarily agricultural parcel under a

11  contract of sale in litigation valued at $1,250,000 on which a similar amount is owing and to

12  which debtors lays no claim other to complete the sale to one of the claimants. There is an

13  adversary compliant pending in this court to determine which of claimants will complete the

14  purchase. There is a business parcel adjacent the University of California, Davis Campus in

15  which and from which debtors from operated their business interests for many years and which is

16  essential to the success of a plan. The business parcel is valued at $4,900,000 and includes

17  considerable land, a sizable office area and connected warehouse and manufacturing area. These

18  building are specially suited to debtors needs and includes a wind tunnel. The business parcel

19  has considerable intrinsic value given its size, architectural aspects and location. The business

20  parcel was valued at a low value due to the timing and time pressure on the seller. Properly

21  marketed and given the improving condition, the building might reasonable sell for

22  $7,500,000.00.

23         The debtors are the largest shareholders in Freedom Motors and separately in Moller

24  International. Their stock ownership in Freedom Motors is valued at over 40 million dollars and

25  Moller International at over 7 million dollars. In addition Moller International owes debtors over

26  3 million dollars in loans, $875,000 in accrued wages and over $1,715,000 in delinquent lease

27  payments. Freedom Motors is in an advanced stage of completion of a license agreement which

BERNHEIM
GUTIERREZ
&
MCCREADY

255 NORTH
LINCOLN
STREET

DIXON
CA
95620

PHONE
(707) 678-4447

FAX
(707) 678-0744

1 should when signed generate over $8,000,000 in cash within 6 months of which most will go to

2 repay Moller International for previous engine development work and which in turn will go to

3 debtors for the lease, wages and loans. There should be considerable cash flow into Freedom

4 Motors during 2010 from royalties to support the ongoing rents to the debtors as the building is

5 utilized at least for some period of time.

6       C. Debtor Activities

7       Rosa Moller is a full time state employee and intends to continue until retirement.

8 Paul Moller continues as an employee of Moller International and accrue wages. Paul is also the

9 chief executive officer of Freedom Motors. Most of Paul's effort are in pursuant of his licensing

10 efforts on which he continues to be optimistic.

11       D. Debt Structure

12       There are 11 secured creditors. There are 3 creditors secured by the Agricultural

13 Parcel. There is a pending adversary complaint in which two parties are contending to purchase

14 the Agricultural Parcel for $1,250,000.00. At the price, those 3 secured creditors will be

15 satisfied. The equity of $366,076 will yield the bankruptcy estate some funds. The adversary

16 complaint may be set for trial as early as this January of 2010. The time of close of escrow and

17 the terms of sale of the Agricultural Parcel remain uncertain and determination will follow

18 resolution of the Adversary Complaint. The plan is not dependent on the outcome of the

19 adversary complaint.

20       There are 4 creditors secured by the Residence Parcel. These claims are about

21 $977,749.00. The personal residence is valued at $1,500,000.00 in the schedules. The

22 debt/value amounts to 65%. The plan is to bring these payments current from the ongoing

23 income of the Debtors and retain this property under all alternatives of the plan.

24       There are 2 creditors secured by the Business Parcel which includes a commercial

25 facility located at 1222 Research Park Drive in Davis, CA. This property houses unique

26 equipment needed for the technology and for which the Research Park Drive property is crucial

27 to the sale of the technology by providing proto-types associated with the technology and needed

BERNHEIM
GUTIERREZ
&
McCREADY

255 NORTH
LINCOLN
STREET

DIXON
CA
95620

PHONE
(707) 678-4447

FAX
(707) 678-0744

11

EXHIBIT F PAGE 76

technical support relating to tooling. These creditors are not now being paid. Their claims amount to about $4,000,000.00. The land and building is valued at $4,900,000.00 in the schedules, a conservative valuation. The debt/value amounts to 82%. The plan is to begin monthly payments approximately one year after the bankruptcy was filed or sooner should funds become available. Alternatively, the property was marketed until shortly before the filing subject to a lease back to Freedom Motors and Moller International. The University of California, Davis Campus is adjacent and the University has expressed interest in purchasing the Business Parcel from time to time.

The Debtors' car is paid for. The debtors need a form of reliable transportation to participate effectively in the plan.

## IV.    BANKRUPCTY EVENTS

### A.    Retention of Counsel

Paul Sandner Moller retained the law firm of Bernheim, Gutierrez & McCready as counsel. The Court approved employment of this firm on June 19, 2009.

## V.    CLAIMS

### A.    Class 1- Secured Claims

Class 1 consists of the following creditors: Bay Area Financial, Capitol Region Equities (Ed or Dana Foss), Dana and Edward Foss, Exchange Bank, Lucia Napoli Cosmeli, Morgan Stanley, Sterling Pacific, U.S. Bank, Victoria Schlechter, and Washington Mutual. This Class is further split into six subclasses:

(i.)    This subclass consists of the 3 Creditors secured by the Agricultural parcel. The Agricultural Parcel is not a significant element of the plan.

(ii.)    This subclass consists of the Creditor secured by the Chile parcel. The Chile parcel is not a significant element of the plan.

(iii.)    This subclass consists of the Creditor secured by the car. The car is not a significant element of the plan.

BERNHEIM
GUTIERREZ
&
McCREADY

255 NORTH
LINCOLN
STREET

DIXON
CA
95620

PHONE
(707) 678-4447

FAX
(707) 678-0744

EXHIBIT F PAGE 77

(iv.) This subclass consists of the Creditors secured by the personal residence of the Debtors. The personal residence is not a significant element of the plan.

(v.) This subclass consists of the Exchange Bank which holds the first on the Business parcel. The Business parcel is central to a successful plan.

(vi.) This subclass consists of Sterling Pacific which holds the second on the Business parcel. This loan was not for purchase money and if the security is lost, this creditor will become an unsecured creditor. The Business parcel is central to a successful plan.

B. <u>Class 2- Tax Claims</u>

Class 2 consists of the following creditors: Internal Revenue Service and State of California-EDD.

C. <u>Class 3- Administrative Claims</u>

Class 3 consists of all claims for the cost of administration of the Debtors' bankruptcy Estate. Included in this class are all claims for administrative expenses entitled to priority under Bankruptcy Code § 507(a)(2) for the attorneys and other professional persons employed by the Debtors, and all actual and necessary expenses of operating the Debtors business pursuant to Bankruptcy Code § 503(b).

D. <u>Class 4- General Priority Claims</u>

Class 4 consists of the holders of the Allowed Claims entitled to priority pursuant to Section 507(a) of the Bankruptcy Code other than (i) a Tax Claim entitled to priority pursuant to Section 507(a)(8) of the Bankruptcy Code which is treated in Class 2, and (ii) am Administrative Claim entitled to priority pursuant Section 507(a)(2) of the Bankruptcy Code which is treated in Class 3. The Debtors do not believe there are any General Priority Claims.

E. <u>Class 5- Unsecured, Non-Priority Claims</u>

Class 5 consists of the holders of Allowed Claims of creditors whose claims are not secured by property owned by the Debtors and are not entitled to priority pursuant to Bankruptcy Code § 507. The claims that make up Class 5 total approximately $1,044,978.00.

F. <u>Class 6-Equity Interest Holders</u>

Class 6 consists of the Debtors themselves.

BERNHEIM
GUTIERREZ
&
MCCREADY

255 NORTH
LINCOLN
STREET

DIXON
CA
95620

PHONE
(707) 678-4447

FAX
(707) 678-0744

MOLLER AMENDED DISCLOSURE STATEMENT 10/27/09

## VI. LIQUIDATION ANALYSIS

This Plan is a liquidating plan with assets being sold or exploited and the proceeds distributed to creditors. The primary asset being liquidated is the rotary engine technology which has been appraised at multiples of the debts mentioned herein. Therefore, creditors will be receiving as much or more under the Plan than they would under Chapter 7.

The rotary engine technology is protected by a number of patents and is protected as proprietary information. The patents and intellectual property is assignee to either Freedom Motors or Moller International and the licensing efforts by the Debtors on behalf of the corporations will at some result in the flow through of funds needed for the plans.

## VII. TAX CONSEQUENCES

Neither the Debtors nor their lawyers can make any statements with regard to the tax consequences of the Plan on any of the creditors. Each creditor in this case, when analyzing the Plan, should consult with its own professional advisors to determine whether or not acceptance of the Plan by the creditor will result in any adverse tax consequences to the creditor.

The Bankruptcy Tax Act generally provides that the Debtors do not have to recognize income from the discharge of indebtedness. The Debtors do not believe the Plan will cause any adverse tax consequences.

## VIII. PLAN SUMMARY

THE FOLLOWING STATEMENTS CONCERNING THE PLAN ARE MERELY A SUMMARY OF THE PLAN AND ARE NOT COMPLETE. THE STATEMENTS ARE QUALIFIED ENTIRELY BY EXPRESS REFERENCE TO THE PLAN. CREDITORS ARE URGED TO CONSULT WITH COUNSEL OR EACH OTHER IN ORDER TO UNDERSTAND THE PLAN FULLY. THIS PLAN IS COMPLETE, INASMUCH AS IT PROPOSES A LEGALLY BINDING AGREEMENT BY THE DEBTOR, AN INTELLIGENT JUDGMENT CANNOT BE MADE WITHOUT READING IT IN FULL.

A. **Class 1- Secured Claims.**

BERNHEIM
GUTIERREZ
&
MCCREADY

255 NORTH
LINCOLN
STREET

DIXON
CA
95620

PHONE
(707) 678-4447

FAX
(707) 678-0744

BERNHEIM
GUTIERREZ
&
McCREADY

255 NORTH
LINCOLN
STREET

DIXON
CA
95620

PHONE
(707) 678-4447

FAX
(707) 678-0744

Class 1 consists of the claims of Dana and Edward Foss, Exchange Bank, Lucia Napoli Cosmeli, Morgan Stanley, Sterling Pacific, U.S. Bank, Victoria Schlechter and Washington Mutual who all hold Secured Claims.

These parties shall be paid the full amount of their respective Allowed Secured Claim. Payments shall be made under one of the following three alternatives:

Under the alternatives, the Residence Parcel, the Chile Parcel and the Agricultural Parcel are dealt with in the same matter. The Residence Parcel and Chile Parcel will be retained. Chile Parcel is subject to a life estate of uncertain length and thus making uncertain the value if any of disposing of this asset.

The Agricultural Parcel will be confirmed as sold to either the Houses or Fosses as determined pursuant to the pending Adversary Complaint when resolved which should determine the terms of sale and timing of sale. The Houses contend the Houses had a lease in good standing containing a right of first refusal as to any sale by the Debtors. The Debtors contend the lease was not in good standing and even if Houses had a right of first refusal, the Houses did not exercise and perform in a reasonable manner to perfect a purchase. The Fosses contend that the Fosses have an enforceable contract to purchase the Agricultural Parcel.

The resolution of the issues surrounding the Agricultural Parcel will not significantly impact the overall success or failure of the Plan.

Retention of the Residence Parcel and Chile Parcel will not significantly impact the overall success or failure of the Plan.

1. <u>Alternative One- Licensing of Technology by Freedom Motors, Inc. and Moller International, Inc.</u>

Debtors is the controlling shareholder and executive officer of Freedom Motors and of Moller International. Over the last 30 years these entities have sent millions of dollars developing technologies of increasing value as the planet's dependency on the reciprocating engine must be reduced by increasing efficiencies and use of new engines. As described in section III herein, FM and MI are on the verge of participating in a major way in the propulsion revolution. Any meaningful participation, will result in

15

EXHIBIT F PAGE 80

funds flowing through to the Debtors by lease of the Business Parcel, employee compensation and dividends to bring all secured creditors current and pay the other creditors in full. The largest Creditorsof FM and of MI are he Debtors. There is no conflict of interest between FM, MI and Debtors with regard to maximizing the revenue to be generated by licensing the technology. The Plan will give the Debtors and in turn FM and MI the breathing space needed to prevent the licensees from taking advantage of the financial pressure on the Debtors.

2.    Alternative Two - Sale With Lease Back of Business Parcel

Debtors shall sell the Business Parcel, preferably with a lease-back keeping the property and its unique attributes available to FM and MI for a reasonable period of time, in its entirety, with the creditors holding Secured Claims liens' attached to the proceeds of such sale. Unless the creditors holding Secured Claims in this parcel consent to such sale, the net proceeds of such sale must be in excess of the creditors Allowed Secured Claims in the parcel. If there is any concern that the net proceeds of such sale are greater than the creditors Allowed Secured Claims in the parcel, the Debtors will seek an order from the Bankruptcy Court approving such sale.

The Debtor will again enter into a Listing Contract on January 4, 2010 with Jim Gray and will seek a Bankruptcy Court order allowing the employment of Jim Gray for the purposes of marketing, listing, and otherwise brokering the sale of the Subject Property. The initial list price for the Subject Property will be at least $5,000,000.00. The Debtors marketed the property prior to the bankruptcy filing using Jim Gray. The efforts were not successful. The market for selling the property to the University of California or otherwise is believed to be improving. The delay in marketing until the first of year is believed appropriate as improvements in the market are expected and additionally, this is not a preferred alternative.

3.    Alternative Three- Sell of Shares in FM and MI

Simultaneously with the Debtors efforts to sell the Business Property, the Debtors will actively pursuing after January 4, 2010 selling significant shares owned by the Debtors in Freedom Motors, Inc. and Moller International, Inc. if a reasonable valuation for the shares can be obtained.

4.    Commencement of Monthly Payment Amounts

BERNHEIM
GUTIERREZ
&
MCCREADY

255 NORTH
LINCOLN
STREET

DIXON
CA
95620

PHONE
(707) 678-4447

FAX
(707) 678-0744

16

As part of any of the above alternatives, Debtor will commence monthly payments beginning on September 1, 2010. The monthly payments to all creditors holding Allowed Secured Claims shall be calculated as follows.

First, beginning on the Petition Date and ending on September 1, 2010, the Allowed Secured Claims will accrue interest at the Prime Rate plus 1% ("Floating Rate"). Similarly, on each June 1st anniversary thereafter, the Floating Rate will be adjusted to the Prime Rate plus 1%.

Second, the Bank Calculation Claim shall be equal to the amount owed under all the secured claims excluding any (i) accrued and unpaid interest due to a default rate of interest since the inception of the loan and (ii) default fees since the inception of the loan.

Third, the dollar amount of the monthly payments to begin on September 1, 2010, and to be continued on the first day of each subsequent month thereafter, shall be calculated as follows:

$$\frac{\text{(Bank Calculation Claim)} \times \text{(Floating Rate)}}{12} = \text{Monthly Payment Amount}$$

5.      Conversion to Chapter 7 or Fund Insufficiency

The class 1 secured creditors have been broken down into six subclasses primarily by security. Subclass (i.) are the creditors associated with the Agricultural parcel. There are 2 buyers who are competing to buy the Agricultural parcel and they are buying at a price which will satisfy the associated secured debt. The bankruptcy is effecting the venue for the lawsuit but otherwise these creditors should be taken care under any of the possible scenarios.

Subclass (ii.) is the creditor secured by a real estate parcel in Chile in which Rosa Moller has a remainder interest upon the debt of her Aunt and is obligated to support the Aunt or loss the remainder interest. Under any scenario, there is sufficient equity to satisfy this creditor and the creditor has no recourse to personal liability.

Subclass (iii.) is the creditor on the car. The debt is modest and the 60% debt to value ratio should be sufficient to see this creditor paid under any possible scenario.

BERNHEIM
GUTIERREZ
&
MCCREADY

255 NORTH
LINCOLN
STREET

DIXON
CA
95620

PHONE
(707) 678-4447

FAX
(707) 678-0744

MOLLER AMENDED DISCLOSURE STATEMENT 10/27/09

EXHIBIT F PAGE 82

Subclass (iv.) are the three creditors associated with the personal residence of the Debtors. The 60% of debt to value ration should be sufficient to see these creditors paid under any possible scenario.

Subclass (v.) is the creditor holding the first position on the Business parcel. Under any scenario this creditor would no doubt resort to a non-judicial foreclosure and his debt satisfied.

Subclass (vi.) is Sterling Pacific, the creditor holding the second position on the Business parcel. Sterling Pacific could lose the security for its loan (although the loan survives and becomes an unsecured claim) while at the same time is the creditor most likely to have a 100% or 200% or more return on its debt, if Sterling Pacific forecloses and takes possession. If the first position on the Business Parcel, Exchange Bank forecloses as a result of a relief of stay or the stay terminates otherwise, Sterling Pacific may choose not to bid and become an unsecured creditor. On the other hand, if the Sterling Pacific becomes the owner as a result of a foreclosure of its own or of a foreclosure by Exchange Bank, the property can be held for a short time and marketed under less pressure and given the existing equity and improving conditions, this creditor could double or triple their loan amount. This creditor' loan is less then 20% of the value of the property. If the property increases 20% in value (recovering 50% of the pre-recession valuation, this property is down more than 40 % of its one time value), Sterling Pacific doubles its money.

B.  **Class 2- Tax Claims**

Class 2 consists of two (2) Tax Claims and they are from the following agencies: Department of the Treasury, Internal Revenue Service (Ogden UT) whose claim is in the amount of $372,173.00 and State of CA- EDD whose claim is in the amount of $11,789.00; both related to payroll taxes owed by Moller International, one of the Debtor's companies.

There are real estate taxes due on various of the real properties. These will be paid under any scenario mentioned herein. Such taxes are liens on the particular real property on which they arise and take priority. Each lien is not significant as compared to the fair market value of parcel and their priority

BERNHEIM
GUTIERREZ
&
MCCREADY

255 NORTH
LINCOLN
STREET

DIXON
CA
95620

PHONE
(707) 678-4447

FAX
(707) 678-0744

EXHIBIT F PAGE 83

assures their payment. Even without a Bankruptcy a parcel owner can let such taxes lapse for years without fear of a tax sale.

Taxing authorities holding a Tax Claim, to the extent such Claim is an Allowed Claim, shall receive, on account of such Claim, a lump sum payment in full of its Allowed Tax Claim when the sale of the Business Parcel closes.

In the event that the Business Parcel does not sell, each holder of a Tax Claim shall receive deferred cash payments on account of such Claim over a period of years, of an aggregate value, as of the Effective Date, equal to the Allowed Amount of such Claim. The period of payment shall commence one year after the Effective Date and continue until a date that is the earlier of (i) the fifth (5th) anniversary of the Effective Date, or (ii) the fifth anniversary of the assessment of the Claim. The deferred cash payments shall be equal to quarterly installments of principal and interest at the Tax Claim Rate, with the first such payment being payable within one year of the Effective Date. Interest on the tax claims will be paid at the rate being paid on 5-year treasury bills at the date of confirmation, plus 2%. Payments shall be made under one of the following three alternatives:

B. Class 3- Administrative Claims

Pursuant to Section 1129(a)(9)(A) Class 3 Allowed Claims will be paid in cash, in full on the later of the Effective Date or the date upon which such claims become Allowed Claims, or as otherwise ordered by the Bankruptcy Court, unless a different treatment is agreed to with the claim holder. Allowed Administrative Claims will be paid from assets of the Estate or the proceeds there from. Professionals and entities who may be entitled to allowance of fees and expenses from the Estate pursuant to Section 503(b)(2) through (6) of the Bankruptcy Code will receive cash in the amount awarded to such professionals or entities in accordance with, and at such times as may be provided in, Final Orders entered pursuant to Sections 330 or 503(b)(2) through (6) of the Bankruptcy Code.

C. Class 4- General Priority Claims

The Debtors do not believe there are any General Priority Claims. Pursuant to Section 1129(a)(9)(A) Class 4 Allowed Claims will be paid in cash, in full on the later of the Effective Date or the date upon which such claims become Allowed Claims, or as otherwise ordered by the Bankruptcy

BERNHEIM
GUTIERREZ
&
MCCREADY

255 NORTH
LINCOLN
STREET

DIXON
CA
95620

PHONE
(707) 678-4447

FAX
(707) 678-0744

19

EXHIBIT F PAGE 84

BERNHEIM
GUTIERREZ
&
MCCREADY

255 NORTH
LINCOLN
STREET

DIXON
CA
95620

PHONE
(707) 678-4447

FAX
(707) 678-0744

Court, unless a different treatment is agreed to with the claim holder. Allowed Administrative Claims will be paid from assets of the Estate or the proceeds there from.

### D. Class 5- Unsecured, Non-Priority Claims

The holders of Allowed Claims in Class 5 shall receive a pro rata payment of monies, up to 100% of their Allowed Claims, that the Debtors have after the sale of the Business Parcel has closed and creditors with the Allowed Secured Claims in Class 1, creditors with Allowed Tax Claims in Class 2, creditors with Allowed Administrative Claims in Class 3, and creditors with Allowed General Priority Claims in Class 4 have been paid in full.

### E. Class 6- Equity Interest Holders

The Debtors shall continue to possess all of the rights normal to them, free of any claims that may have existed prior to confirmation of the Plan, except those rights that are determined or are otherwise restricted by this Plan. The Debtors shall continue to be Debtors in possession unless and until such arrangement is altered or amended pursuant to an order of the Bankruptcy Court. To the extent that there exists any monies possessed by Debtors after the sale of Business Parcel has closed and creditors with Allowed Claims in Classes 1 through 5 have been paid in full, the Debtors in Class 6 shall receive said monies to use in any lawful manner.

## IX.  **VOTING PROCEDURES**

The Plan divides the claims of the creditors into separate classes, namely Class 1- Secured Claims, Class 2- Tax Claims, Class 3- Administrative Claims, Class 4- General Priority Claims, Class 5- Unsecured, Non-Priority Claims Insider Debt, and Class 6- Equity Interest Holders. All Classes of claimants are encouraged to vote; however, only the vote of holders claims that are impaired by the Plan will have significant impact upon the confirmation process.

All creditors entitled to vote on the Plan must cast their vote by completing, dating and signing the ballot which has been mailed to them together with the Disclosure Statement. The ballot contains instructions concerning the deadline for submitting the ballot and to what address the ballot should be mailed.

The Disclosure Statement has been approved by the Bankruptcy Court in accordance with the Bankruptcy Code § 1125, and is provided to each person whose claim has been scheduled by the Debtors, or who has filed a proof of claim or interest with respect to the Debtor or its property and other parties-in-interest known to the Debtors. The Disclosure Statement is intended to assist creditors in evaluating the Plan and in determining whether to accept the Plan. In determining acceptance of the Plan, votes of creditors will only be counted if submitted by a creditor whose Claim is duly scheduled by the Debtors as undisputed, noncontingent and liquidated, or who has timely filed with the Court a proof of claim.

The Bankruptcy Court will schedule a hearing to determine whether the requirements for Confirmation under Bankruptcy Code have been met and whether the Plan has been accepted by each Impaired Class and by the requisite number of creditors in such class. Under Bankruptcy Code § 1126, an impaired class is deemed to have accepted the Plan upon a favorable vote of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of Allowed Claims of Class members voting on the Plan. Further, unless there is unanimous acceptance of the Plan by an Impaired Class, the Court must also determine whether those Class members will receive at least as much as they would if the debtors were liquidated under Chapter 7 of the Bankruptcy Code.

Even if each Class of creditors does not accept the Plan, the Plan can be confirmed under Bankruptcy Code § 1129(b), so long as one Impaired Class of Creditors accepts the Plan. The failure of each Class to accept the Plan could very well result in a conversion of this case to a Chapter 7 or dismissal of the Chapter 11 Case, and the secured creditors repossessing their collateral and disposing of it in a commercially reasonable manner with no obligation to unsecured creditors.

## X.    MODIFICATION OF THE PLAN

In addition to the modification rights under section 1127 of the Bankruptcy Code, Debtors may propose amendments to, or modifications of, this Plan at any time prior to entry of the Confirmation Order, with leave of the Bankruptcy Court, upon such notice as may be prescribed by the Court. After entry of the Confirmation Order, Debtors may, with the approval of the Court, and so long as it does not materially or adversely affect the interest of creditors, cure any omission, correct any defect, or reconcile any inconsistencies in the Plan, the Confirmation Order, or any and all documents executed or to be

BERNHEIM
GUTIERREZ
&
McCREADY

255 NORTH
LINCOLN
STREET

DIXON
CA
95620

PHONE
(707) 678-4447

FAX
(707) 678-0744

21

EXHIBIT F PAGE 86

executed in accordance therewith, in such manner as may be necessary to carry out the purposes and intent of this Plan.

## XI.   EXECUTORY CONTRACTS AND UNEXPIRED LEASES

All leases and other executory contracts not assumed on or prior to the Effective Date shall be rejected as of the Effective Date, unless specific written notice of intent to assume is mailed or delivered to the lessor or other contracting party before the Effective Date. In the event of assumption, all pre-petition defaults will be cured by adding the arrearages to the end of the lease and extending the term of the lease by the number of months of arrearages on each lease.

## XII.   REVESTING

Except as provided for in this Plan or in the Confirmation Order on the Effective Date, the Reorganized Debtors shall be vested with all the property of its estate free and clear of all claims, liens, charges, and other interests of creditors, arising prior to the Effective Date.

## XIII.   RETENTION OF JURISDICTION

Notwithstanding confirmation of the Plan, the Bankruptcy Court shall retain jurisdiction to insure that the purposes and intent of the Plan are carried out. Without limiting the generality of the foregoing, the Bankruptcy Court shall retain jurisdiction until the Plan is fully consummated for the following purposes:

**Claims Determination.** The classification, allowance, subordination and liquidation of the Claim of any creditor (including Administrative Claims) and the reexamination of Allowed Claims for purposes of determining acceptances at the time of Confirmation, and the determination of such objections as may be filed. The failure by the Reorganized Debtors to object to or to examine any Claim for the purpose of determining Plan acceptance shall not be deemed to be a waiver of any right to object to or reexamine any Claim in whole or in part.

**Estate Assets.** The determination of all questions and disputes regarding title to the assets of the Estate, and determination of all causes of action, controversies, disputes, or conflicts, known or unknown, whether or not subject to action pending as of the Confirmation Date, between a Debtor and any other party, including but not limited to, such Debtor's right to recover assets, avoid transfers, recover

BERNHEIM
GUTIERREZ
&
MCCREADY

255 NORTH
LINCOLN
STREET

DIXON
CA
95620

PHONE
(707) 678-4447

FAX
(707) 678-0744

22

fraudulent transfers, offset claims, recover money or property from any party or return assets which were or are the property of the Estate pursuant to the provisions of the Bankruptcy Code.

**Executory Contracts.** The determination of all matters relating to the assumption, assignment, or rejection of executory contracts and unexpired leases, including claims for damages from the rejection of any executory contract or unexpired lease within such time as the Bankruptcy Court may direct.

**Unliquidated Claims.** The liquidation or estimation of damages or the determination of the manner and time for such liquidation or estimation in connection with any contingent, disputed, or unliquidated Claims.

**Plan Corrections.** The correction of any defect, the curing of any omission, or the reconciliation of any inconsistency in the Plan, the Confirmation Order, or any and all documents executed or to be executed in connection therewith, as may be necessary to carry out the purposes and the intent of the Plan, on such notice as the Bankruptcy Court shall determine to be appropriate.

**Plan Modifications.** The modification of the Plan after Confirmation pursuant to the Bankruptcy Rules and the Bankruptcy Code.

**Adversary Proceedings.** The adjudication of all claims, controversies, contested matters or adversary proceedings arising out of any purchases, sales, agreements or obligations made or undertaken by and between a debtor and any third party during the pendency of the Reorganization Cases.

**Plan Interpretation.** The enforcement and interpretation of the terms and the conditions of the Plan and determination of all controversies and disputes that may arise in connection with the enforcement, interpretation or consummation of the Plan.

**Deadlines.** The shortening or extending, for cause, of the time fixed for doing any act or thing under the Plan, on such notice as the Bankruptcy Court shall determine to be appropriate.

**Discharge Injunctions.** The entry of any order, including injunctions, necessary to enforce the title, rights, and powers of the Reorganized Debtors, and to impose such limitations, restrictions, terms and conditions on such title, rights, and powers as the Bankruptcy Court may deem appropriate.

**Case Closing.** The entry of an order concluding and terminating this Reorganization Case.

BERNHEIM
GUTIERREZ
&
McCREADY

255 NORTH
LINCOLN
STREET

DIXON
CA
95620

PHONE
(707) 678-4447

FAX
(707) 678-0744

EXHIBIT F PAGE 88

Additional Matters. The determination of such other matters as may be provided in the Confirmation Order or as may be authorized under Bankruptcy Code or Bankruptcy Rules.

## XIV. NON-ALLOWANCE OF PENALTIES AND FINES

No distribution shall be made under the Plan on account of, and no Allowed Claim, whether secured, unsecured, priority, or administrative shall include any fine, penalty, exemplary, or punitive damages, late charges or other monetary charge relating to or arising from any default or breach by Paul Sandner Moller and Rosa Maria Moller and any claim on account thereof shall be deemed disallowed whether or not an objection is filed to it.

## XV. HEADINGS.

The headings used in the Plan and in this Disclosure Statement are inserted for convenience only and shall not affect the interpretation of the Plan.

## XVI. CONFIRMATION WITHOUT ACCEPTANCE OF ALL CLASSES.

Debtor will request the Bankruptcy Court to confirm the Plan notwithstanding the rejection of the Plan by an impaired Class, pursuant to provisions of section 1129(b) of the Bankruptcy Code.

## XVII. DISCLAIMER.

Court approval of this Disclosure Statement and the accompanying Plan of Reorganization, including exhibits, is not a certification of the accuracy of the contents thereof. Furthermore, Court approval of these documents does not constitute the Court's opinion as to whether the Plan should be approved or disapproved.

RESPECTFULLY SUBMITTED this 26 day of October, 2009.

Dated: 10/26/09            By: /s/ William S. Bernheim
                                William S. Bernheim, Attorney for Debtors

Bernheim
Gutierrez
&
McCready

255 North
Lincoln
Street

Dixon
CA
95620

Phone
(707) 678-4447

Fax
(707) 678-0744

MOLLER AMENDED DISCLOSURE STATEMENT 10/27/09

EXHIBIT F PAGE 89

William S. Bernheim, SBN 56555
RE:   Paul Sandner Moller and Rosa Maria Moller, Debtors
      U.S. Bankruptcy Court, Eastern District of California, Case # 09-29936-C-11

## CERTIFICATE OF MAILING

I declare that I am employed in the County of Solano, State of California.  I am over the age of eighteen years and not a party to this action.  My business address is Bernheim, Gutierrez, & McCready, 255 North Lincoln Street, Dixon, California 95620.

I HEREBY CERTIFY  that on the date below I served a copy of the above and foregoing **MOLLER'S AMENDED DISCLOSURE STATEMENT FOR THE AMENDED PLAN OF REORGANIZATION, DATED OCTOBER 27, 2009** in the above captioned matter by e-file transmission. The foregoing was filed electronically with the United States Bankruptcy Court via the Court's electronic filing system. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. I also served a courtesy copy of the foregoing via U.S. Mail to the following:

Office of the United States Trustee
501 I Street, Suite 7-500
Sacramento, CA 95814

Ronald H. Sargis, Esq.
Hefner, Stark & Marois, LLP
2150 River Plaza Dr. Ste. 450
Sacramento, CA 95833

Walter R. Dahl, Esq.
Dahl & Dahl, Attorneys at Law
2304 "N" Street
Sacramento CA 95816-5716

Don J. Pool, Esq.
The Law Firm of Powell & Pool
7522 N. Colonial Ave. Ste. 100
Fresno CA 93711

GE Money Bank
c/o Recovery Management Systems Corp.
Attn: Ramesh Singh
25 SE 2nd Avenue, Suite 1120
Miami FL 33131-1605

Scott C. Clarkson, Esq.
Clarkson, Gore & Marsella
3424 Carson Street, Suite 350
Torrance CA 90503

Hanno T. Powell, Esq.
The Law Firm of Powell & Pool
7522 N. Colonial Ave. Ste. 100
Fresno CA 93711

Erin L. Laney, Esq.
Pite Duncan, LLP
PO Box 17933
San Diego CA 92177-0933

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed at Dixon, California on October 26, 2009.

_/s/ Araceli L. Lemus_
Araceli L. Lemus

BERNHEIM
GUTIERREZ
&
McCREADY

255 NORTH
LINCOLN
STREET

DIXON
CA 95620

PHONE
(707) 678-4447

FAX
(707) 678-0744

1

EXHIBIT F PAGE 90