2009-29936
FILED
July 06, 2011
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

0003585554

46

1  ANTHONY ASEBEDO (State Bar No. 155105)
**MEEGAN, HANSCHU & KASSENBROCK**
2  Attorneys at Law
11341 Gold Express Drive, Suite 110
3  Gold River, CA  95670
Telephone:  (916) 925-1800
4  Facsimile:  (916) 925-1265

5  Attorneys for Jon Tesar,
Chapter 11 trustee
6

7               UNITED STATES BANKRUPTCY COURT

8               EASTERN DISTRICT OF CALIFORNIA

9                     [Sacramento Division]

10

11  In re:                          Case No. 09-29936-C-11
                                     Docket Control No. MHK-6
12  PAUL SANDNER MOLLER &,
                                     Plan Confirmation Hearing:
13  ROSA MARIA MOLLER,               Date:  June 22, 2011
                                     Time:  10:00 a.m.
14                                   Dept:  C (Courtroom 35)

15               Debtors.            **Hon. Christopher M. Klein**

16
      **ORDER CONFIRMING TRUSTEE'S AND DEBTORS' PLAN OF REORGANIZATION**
17    **DATED FEBRUARY 24, 2011, AS MODIFIED AT THE CONFIRMATION HEARING**

18         The hearing on confirmation of the Trustee's and Debtors' Joint Plan of

19  Reorganization Dated February 24, 2011(the "Plan"), filed on behalf of Jon Tesar as

20  trustee ("Tesar") and Paul and Rosa Moller (the "Debtors"),  came on for hearing on the

21  date and at the time indicated above, before the Honorable Christopher M. Klein.

22  Anthony Asebedo of Meegan, Hanschu & Kassenbrock appeared on behalf of Tesar.

23  William S. Bernheim of Bernheim, Gutierrez & McReady appeared on behalf of the

24  Debtors.  Thomas P. Griffin of Hefner Stark & Marois appeared on behalf of creditor

25  Exchange Bank.  Other appearances, by telephone, were noted on the record.

26  / / /

27  / / /

28  / / /

RECEIVED
June 23, 2011
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0003585554

1

aa:\MHK-6 plan conf ord

1  The court having stated its findings of fact and conclusions of law on the record

2  and having determined after notice and hearing that the requirements for confirmation

3  set forth in 11 U.S.C. § 1129 have been satisfied,

4  **IT IS HEREBY ORDERED** that the Plan, as modified at the confirmation hearing, is

5  confirmed.  A copy of the Plan, including all modifications, is attached hereto as Exhibit

6  1 and is incorporated herein by reference.

13  Dated: July 06, 2011

16  United States Bankruptcy Judge

aa:\MHK-6 plan conf ord

ANTHONY ASEBEDO (State Bar No. 155105)
**MEEGAN, HANSCHU & KASSENBROCK**
Attorneys at Law
11341 Gold Express Drive, Suite 110
Gold River, CA 95670
Telephone: (916) 925-1800
Facsimile: (916) 925-1265

Attorneys for Jon Tesar,
Chapter 11 trustee

WILLIAM S. BERNHEIM (State Bar No. 56555)
**BERNHEIM, GUTIERREZ & McCREADY**
255 North Lincoln Street
Dixon, CA 95620
Telephone: (707) 678-4447
Facsimile: (707) 678-0744

Attorneys for the Debtors

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

### [Sacramento Division]

| | |
|---|---|
| In re:<br><br>PAUL SANDNER MOLLER &<br>ROSA MARIA MOLLER,<br><br>Debtors. | Case No. 09-29936-C-11<br>Docket Control No. MHK-6<br><br><br><br><br>**Hon. Christopher M. Klein** |

**TRUSTEE'S AND DEBTORS' JOINT PLAN
OF REORGANIZATION DATED FEBRUARY 24, 2011**

Jon Tesar (the "Trustee") and Paul Sandner Moller and Rosa Maria Moller (the "Debtors") hereby propose the following Plan of Reorganization Dated February 24, 2011 ("Plan").

**ARTICLE I.
INTRODUCTION**

On May 18, 2009, the Debtors filed a joint voluntary petition for relief under chapter 11 of the United States Bankruptcy Code. On March 29, 2010, the United

1  States Bankruptcy Court entered an order approving the appointment of the Trustee as

2  trustee in the Debtors' chapter 11 case.

3      This Plan is the Trustee's and the Debtors' joint proposal to satisfy the debts

4  owing as of confirmation of this Plan. Creditors and equity security holders (if any)

5  should refer to Articles III, IV, and VII of this Plan for information regarding the precise

6  treatment of claims. A Disclosure Statement that provides detailed information

7  regarding this Plan and the rights of creditors and equity security holders has been

8  circulated with this Plan, and this Plan should be read and evaluated by creditors in

9  conjunction with the Disclosure Statement. **Your rights may be affected. You should**

10 **read these papers carefully and discuss them with your attorney, if you have one. If**

11 **you do not have an attorney, you may wish to consult one.**

12

13                          **ARTICLE II.**
                            **DEFINITIONS**

14      For purposes of this Plan the following terms have the meaning set forth below:

15      1.    "Agricultural Property" means the real property commonly known as

16 9341 Currey Road, Dixon, California 95620.

17      2.    "Ag Property Litigation" means Solano County Superior Court Case Nos.

18 FCS029760 and FCS029789, consolidated into Case No. FCS029760.

19      3.    "Administrative Expense Claim" means any cost, claim, or expense of

20 administration of the Case arising before the Effective Date, allowed and entitled to

21 priority in accordance with the provisions of §§ 503(b) and 507(a)(1) of the Code,

22 including, without limitation, (i) all actual and necessary expenses of preserving the

23 Estate, to the extent allowed by the Court, and (ii) all allowances of compensation

24 and/or reimbursement of expenses of Professionals to the extent allowed by the Court.

25      4.    "Allowed Claim" means a Claim with respect to which either (i) a proof of

26 claim has been filed with the Court by the Claims Bar Date, or (ii) which is set forth in a

27 specific amount in the schedules of liabilities filed in the Case, as amended from time to

28 ///

1  time, and not listed as disputed, unknown, contingent, or unliquidated as to amount;

2  and (iii) in either case as to which no objection to allowance has been made.

3    5.    "Allowed Secured Claim" means an Allowed Claim secured by a lien,

4  security interest, or other charge against property in which the Estate has an interest, or

5  which is subject to setoff under § 553 of the Code, to the extent of the value

6  (determined in accordance with § 506(a) of the Code) of the interest of such Allowed

7  Secured Claim in the Estate's interest in such property or to the extent of the amount

8  subject to setoff, as the case may be.

9    6.    "Case" means the chapter 11 bankruptcy case of the Debtors, designated

10  as Case No. 09-29936-C-11 pending before the Court.

11    7.    "Chile Property" means that real property located at 172 Avenue

12  Sporting, Vina Del Mar, Chile, 2560989.

13    8.    "Claims Bar Date" means September 16, 2009 as to non-governmental

14  claimants, and November 16, 2009 as to governmental units.

15    9.    "Code" means title 11 of the United States Code (11 U.S.C. § 101 et

16  seq.), and any applicable amendment.

17    10.    "Commercial Property" means the real property commonly known as

18  1222 Research Drive, Davis, California.

19    11.    "Confirmation Date" means the date of entry of an order of the Court

20  confirming this Plan.

21    12.    "Confirmation Order" means the order of the Court that confirms this

22  Plan, under § 1129 of the Code.

23    13.    "Court" means the United States Bankruptcy Court for the Eastern District

24  of California, Sacramento Division, in which the Case is pending, and any court having

25  jurisdiction to hear appeal proceedings from such court.

26    14.    "Creditor Account" is that certain bank account or bank accounts to be

27  set up by the Plan Administrator within thirty (30) days of the Effective Date, into

28  which the Plan Administrator shall make deposits and then disbursements to claim

holders (creditors) pursuant to the terms of this Plan; the Plan Administrator may also use any bank account of the Estate existing as of the Confirmation Date, as the Creditor Account.

15.    "Effective Date" of Plan means fifteen (15) days after entry of the order confirming this Plan, provided no stay of confirmation has been entered.

16.    "Estate" means the bankruptcy estate created on commencement of the Case pursuant to § 541(a) of the Code.

17.    "FMI" means Freedom Motors, Inc., a Nevada corporation (entity no. C8097-1997).

18.    "MII" means Moller International, Inc., a California corporation (entity no. C1139348).

19.    "Parties Entitled to Notice" means the Office of the United States Trustee, the Plan Administrator, counsel to the Plan Administrator, the Debtors, counsel to the Debtors, and those parties who, after the Confirmation Date, file with the court and serve on those parties identified above, a written request for Post-Confirmation Notice to be given by mail using the address stated in such written request.

20.    "Petition Date" means the date the Debtors filed their joint voluntary chapter 11 petition, that being May 18, 2009.

21.    "Plan Administrator" means Jon Tesar, who was appointed as chapter 11 trustee in the above-captioned bankruptcy case of the Debtors, and if Jon Tesar is unable or unwilling to serve as Plan Administrator, that person who the Court may appoint as Plan Administrator after notice and hearing.

22.    "Plan of Reorganization" or "Plan" means this Plan of Reorganization submitted by the Trustee and the Debtors, as amended or modified in accordance with the Code and Federal Rules of Bankruptcy Procedure.

23.    "Plan Proponents" means collectively the Trustee and the Debtors.

24.    "Post Confirmation Expenses" means all costs, claims, and expenses incurred after the Confirmation Date which (i) if incurred before the Confirmation Date

1 | would have been Administrative Expense Claims or (ii) are reasonable, actual, and
2 | necessary costs incurred by the Plan Administrator in carrying out his duties under this
3 | Plan.

4 |     25.   "Post-Confirmation Notice" means note less than ten (10) days' notice by
5 | first-class mail to the Parties Entitled to Notice.

6 |     26.   "Professional" means person or entity retained or to be compensated
7 | pursuant to §§ 326, 327, 330, 503(b), and/or 1103 of the Code.

8 |     27.   "Pro Rata" means the proportion of the amount of an Allowed Claim in a
9 | particular class to the aggregate amount of all Allowed Claims which are entitled to a
10 | particular distribution (including disputed or undetermined claims until disallowed) in
11 | such class. In the case of unclassified Priority Tax Claims, this term means the
12 | proportion of the allowed amount of any particular Priority Tax Claim to the aggregate
13 | allowed amount of all Priority Tax Claims.

14 |     28.   "Residential Property" means the real property commonly known as 9350
15 | Currey Road, Dixon, California 95620.

16 |     29.   Unless otherwise provided above, the terms used in this Plan shall have
17 | the same meaning as set forth in §§ 101 and 102 of the Code.

**ARTICLE III.**
**IDENTIFICATION AND TREATMENT OF ADMINISTRATIVE**
**EXPENSE CLAIMS, PRIORITY TAX CLAIMS, AND U.S. TRUSTEE FEES**

20 |     Under § 503 of the Code, the Court determines and allows administrative
21 | expenses of the Estate, which are to be paid as priority claims under § 507(a)(2) of the
22 | Code. Under § 1123(a)(1) of the Code, claims allowed under § 507(a)(2) of the Code,
23 | and under § 507(a)(8) of the Code are not in classes.

24 | A.    Administrative Expense Claims.

25 |     The Plan Administrator shall pay the full amount of Administrative Expense
26 | Claims on the Effective Date, or upon such other terms as may be agreed upon by the
27 | holder of any such claim. Should any holder of an Administrative Expense Claim agree
28 | to payment after the Effective Date, the unpaid amount of such claim shall accrue and

1  be paid interest at the rate of 5% per annum after the Effective Date or after approval

2  by the Court, whichever is later.

3      All fees required to be paid by 28 U.S.C. §1930(a)(6) (U.S. Trustee Fees) will

4  accrue and be timely paid as an Administrative Expense Claim until such time as the

5  case is closed, dismissed, or converted to another chapter of the Code.  Upon closing of

6  the Case, no further U.S. Trustee Fees shall be due, except for any calendar quarter

7  during which the case may be reopened and during which the case stays open for at

8  least three (3) consecutive months.  Any U.S. Trustee Fees owed on or before the

9  Effective Date of this Plan will be paid on the Effective Date.  The Trustee anticipates

10 that as of the Effective Date, fees due for the first quarter 2011 will have been paid,

11 and the quarterly fee for the calendar quarter of confirmation will be due and will be

12 paid at the end of the month thereafter.

13     Other than Professionals employed by the Trustee pre-confirmation, any party

14 that asserts any Administrative Expense Claim, whether such claim is fixed, liquidated,

15 contingent, or unliquidated, and regardless of whether priority status is asserted for

16 such claim, must, no later than thirty (30) days following the Effective Date, file and

17 serve a motion under applicable rules of procedure for allowance of such claim,

18 otherwise such claim shall be barred.  After confirmation of the Plan, the Plan

19 Administrator shall have the right to object to allowance of any Administrative Expense

20 Claim, and the Court shall have jurisdiction to determine such objections.

21 B.    Priority Tax Claims.

22     These are the Allowed Claims of governmental units for taxes, duties, and

23 penalties pursuant to § 507(a)(8) of the Code ("Priority Tax Claims").  Claimants include

24 the U.S. Internal Revenue Service, California Franchise Tax Board, and the California

25 Employment Development Department.  The total allowed amount of Priority Tax

26 Claims currently totals approximately $168,700.

27     Priority Tax Claims will be paid in the full allowed amount thereof, or such

28 portion of the allowed amount thereof Pro Rata as available funds permit, on the

1   Effective Date or as soon thereafter as is practicable or as otherwise ordered by the

2   Court, unless different treatment is agreed between the holder of any such claim and

3   the Plan Administrator; provided however, that the Plan Administrator shall have the

4   right to the maximum deferral of payment of claims of the kind specified in § 507(a)(8)

5   of the Code, as permitted by § 1129(a)(9)(C) of the Code.  Priority Tax Claims shall

6   accrue and be paid interest post-confirmation at the rate provided by applicable non-

7   bankruptcy law (except as may be agreed otherwise) until paid in full.

**ARTICLE IV.**
**CLASSIFICATION OF CLAIMS**

10      The claims of creditors shall be divided into the following classes:

11      **CLASS 1:**      Priority Non-Tax Claims.

12      Priority claims that are referred to in § 507(a)(1), (4), (5), (6), and (7) of the

13  Code are required to be placed in a class.  These claims consists generally of priority

14  non-tax claims, such as claims for certain wages, claims for certain contributions to

15  employee plans, and claims for domestic support obligations.  There are no known

16  Class 1 Allowed Claims in the Case.

17      **CLASS 2:**      Secured Claims.

18      The Allowed Secured Claims set forth in this Class 2 are subject to valuation of

19  the claimant's collateral and determinations under the provisions of this Plan.  This class

20  is subdivided as set forth below, to provide for the individual treatment of such claims

21  as required by § 1122(a) of the Code.

22      After confirmation of this Plan, the Plan Administrator shall continue to have

23  rights and authority to seek determination of the secured status of any claim pursuant

24  to § 506 of the Code.  In the event the Plan Administrator and any creditor cannot

25  agree upon the portion of the creditor's claim that is secured, the Court shall have

26  jurisdiction post confirmation to determine same.

27  / / /

28  / / /

**Class 2.1** Solano County Tax Collector.

This is the Allowed Secured Claim of the Solano County Tax Collector ("County") based on unpaid real property taxes. The County has not filed a Proof of Claim for any amount, and the Debtors scheduled no amount owing to the County. The Trustee is informed, however, that approximately $35,000.00 in real property taxes secured by the Commercial Property were due and owing as of the Petition Date.

**Class 2.2** Exchange Bank.

This is the Allowed Secured Claim of Exchange Bank, which claim is secured by a first deed of trust against the Commercial Property.[1] On August 5, 2009, Exchange Bank filed a proof of claim in the Case, asserting a secured claim in the amount of $3,319,985.77. The promissory note in favor of Exchange Bank calls for interest to accrue at the rate of 7.3% per year, until January 1, 2012, after which time the interest rate becomes variable, on the principal amount of $3,300,000.00. On or about October 19, 2010, the Court entered an order approving a stipulation between the Trustee and Exchange Bank (the "Stipulation"), under which Exchange Bank was authorized to record and serve a Notice of Sale regarding the Commercial Property. Under the Stipulation, Exchange Bank was given authority to conduct a foreclosure sale of the Commercial Property if the obligation to Exchange Bank was not reinstated under state law by December 24, 2010, except that if the Trustee timely delivered certain periodic adequate protection payments to Exchange Bank, no sale would be conducted until March 31, 2011, at which time a foreclosure sale could be conducted unless the obligation to Exchange Bank was by that date reinstated under state law. To date, the Trustee has made such adequate protection payments to Exchange Bank.

/ / /

---

1. On Jan. 24, 2007, Exchange Bank filed with the California Secretary of State's office a UCC-1 Financing Statement describing the Debtors' machinery, furniture, fixtures, and equipment, but Exchange Bank did not take a security interest in such or any other personal property pursuant to the Commercial Code.

1       **Class 2.3**     <u>Sterling Pacific Financial, Inc. or Assignee.</u>

2           This is the Allowed Secured Claim of Sterling Pacific Financial, Inc., or

3 assignee ("Sterling"), which claim is secured by way of a second deed of trust against

4 the Commercial Property. According to a motion filed on behalf of parties asserting to

5 hold the beneficial interest in Sterling's claim, this claim totaled approximately

6 $823,537.00 as of September 29, 2009, and the Debtors had missed payments in the

7 aggregate amount of approximately $102,000 due under the promissory note up

8 through September 2009. The promissory note in favor of Sterling calls for interest to

9 accrue at the rate of 12.5% per year, on the principal amount of $700,000.00. As of

10 this date, no Proof of Claim has been filed by Sterling in the Case.

11       **Class 2.4**     <u>Morgan Stanley Dean Witter Credit Corp. or Assignee.</u>

12           This is the Allowed Secured Claim of Morgan Stanley Dean Witter Credit

13 Corporation or assignee ("Morgan Stanley"), which claim is secured by way of a first

14 deed of trust against the Residential Property. On September 16, 2009, the party

15 asserting to hold the beneficial interest in this Claim filed a proof of claim in the Case,

16 asserting a secured claim in the amount of approximately $392,226.28 (the "MS

17 Claim"); the MS Claim also asserts that the promissory note in favor of Morgan Stanley

18 calls for variable rate interest (the rate is not disclosed), on the principal amount of

19 $398,000.00. Morgan Stanley has received certain adequate protection payments

20 made by the Trustee after the Petition Date, pursuant to an order of the Court.

21       **Class 2.5**     <u>U.S. Bank, N.A.</u>

22           This is the Allowed Secured Claim of U.S. Bank, N.A., or assignee ("US

23 Bank"), which claim is secured by a second deed of trust against the Residential

24 Property. On June 18, 2009, US Bank filed a proof of claim in the Case, asserting a

25 secured claim in the amount of $165,705.97 (the "USB Claim"). The promissory note

26 in favor of US Bank calls for interest to accrue at the rate of 7.24% per year, on the

27 principal amount of $190,000.00. US Bank has received certain adequate protection

28 / / /

1 | payments made by the Trustee after the Petition Date, pursuant to an order of the
2 | Court.

**Class 2.6**   Bay Area Financial Corp.

4 | This is the Allowed Secured Claim of Bay Area Financial Corporation or
5 | assignee ("BAFC"), which claim is secured by a third deed of trust against the
6 | Residential Property. According to a motion filed in the Case on behalf of BAFC, this
7 | claim totaled approximately $358,173.00 as of December 31, 2009. The promissory
8 | note in favor of BAFC calls for variable-rate interest to accrue at the rate of 8.25% over
9 | the prime rate, on the principal amount of $350,000.00. As of this date, no Proof of
10 | Claim has been filed by Sterling in the Case. BAFC has received certain adequate
11 | protection payments made by the Trustee after the Petition Date, pursuant to an order
12 | of the Court.

**Class 2.7**   Victoria Schlechter.

14 | This is the Allowed Secured Claim of Victoria Schlechter or assignee
15 | ("Schlechter"), which claim is secured by a fourth deed of trust against the Residential
16 | Property. According to the Debtor's schedules filed in the Case, as amended, this claim
17 | totaled approximately $109,000.00 as of the Petition Date. As of this date, no Proof
18 | of Claim has been filed by Schlechter in the Case, and the contract interest rate is 7.0%
19 | per year.

**Class 2.8**   Washington Mutual Bank or Successor/Assignee.

21 | This is the Allowed Secured Claim of Washington Mutual Bank or
22 | successor/assignee ("WaMu"), which claim is secured by a first deed of trust against
23 | the Agricultural Property. On September 15, 2009, the party asserting to hold this
24 | claim filed a proof of claim in the Case, asserting a secured claim in the amount of
25 | $317,126.40. The promissory note in favor of WaMu calls for interest to accrue at the
26 | rate of 6.0% per year, on the principal amount of $333,500.00.

27 | / / /

28 | / / /

**Class 2.9**   Capital Region Equities, L.L.C. or Assignee.

This is the Allowed Secured Claim of Capital Region Equities, L.L.C. or assignee ("Capital"), which claim is secured by a second deed of trust against the Agricultural Property.  The Debtors scheduled a secured claim in favor of Capital in the amount of $350,000.00.  The promissory note held by Capital calls for interest to accrue at the rate of 12% per year, on the principal amount of $350,000.  Capital has not filed a proof of claim in the Case.

**Class 2.10**   Dana Foss and Edward Foss or Assignee.

This is the Allowed Secured Claim of Dana Foss and Edward Foss or assignee ("Foss"), which claim is secured by a third deed of trust against the Agricultural Property.  The Debtors scheduled a secured claim in favor of Foss in the amount of $225,000.00.  The promissory note in favor of Foss calls for interest to accrue at the rate of 7% per year, on the principal amount of $225,000.  Foss has not filed a proof of claim in the Case.

**Class 2.11:**      Gregory House and Jennifer House.

This is the Allowed Secured Claim of Gregory House and Jennifer House (collectively, "House"), which claim is secured by a lis pendens recorded against the Agricultural Property. On September 16, 2009, House filed a proof of claim in the Case, as a secured claim in the amount of $622,622.00, designated by the clerk of the Court as  Proof of Claim No. 16 ("Claim No. 16").  The Debtors did not schedule a claim in favor of House.  Claim No. 16 is based on damages allegedly caused by the Debtors' breach of an agreement under which House claims that House was entitled to purchase the Agricultural Property, and which damages are claimed the Ag Property Litigation.

**Class 2.12**   BMW Bank of North America.

This is the Allowed Secured Claim of BMW Bank of North America ("BMW"), which claim as of the Petition Date was secured by a purchase-money security interest in a 2002 BMW 540i automobile (the "Vehicle") valued by the Debtors at $11,000.00. On September 3, 2009, BMW filed a proof of claim in the Case (the

1     "BMW Claim"), asserting a secured claim in the amount of $3,615.17. The loan

2     documents call for monthly payments to BMW in the amount of $730.07 each, with

3     interest to accrue on the amount borrowed at the rate of 5.75% per year. After the

4     Petition Date, the Debtors made monthly contract payments as same came due, and

5     through such payments paid the entire balance due under the contract with BMW. The

6     Debtors claimed as exempt the sum of $2,550 in regard to the Vehicle.

7     **CLASS 3**:       Executory Contracts and Leases.

8     These Allowed Claims are based on executory contracts and leases between the

9     Debtors and third parties, and known Class 3 Allowed Claims are subdivided as stated

10     below:

11     **Class 3.1**       Dana Foss and Edward Foss.

12     This is the Allowed Claim of Dana Foss and Edward Foss ("Foss") based

13     on a month-to-month lease under which the Debtors are lessor and Foss is lessee of the

14     Agricultural Property.

15     **Class 3.2**       Moller International, Inc.

16     This is the Allowed Claim of MI, based on the Lease Agreement dated

17     July 1, 2003 ("Lease") under which the Debtors are lessor and MII is lessee of the

18     Commercial Property. The term of the Lease runs from July 1, 2003 through July 30,

19     2013 and the Lease calls for monthly rent payments to the Debtors of $41,500.00 per

20     month. As of this time, the Debtors have committed no defaults under the Lease (but

21     MII is in arrears in payments due under the Lease in the aggregate amount of

22     approximately $2,337,000).

23     **CLASS 4**:       General Unsecured Creditors.

24     These are the Allowed Claims of general unsecured creditors, any Allowed

25     Secured Claim that as a result of a valuation of the secured claimant's collateral the

26     Claim is unsecured in whole or in part pursuant to the terms of this Plan, and Allowed

27     Claims that result from rejection of a lease or executory contract. This class includes

28     any and all claims which are not more particularly described in Class 1; Class 2.1

through Class 2.12, inclusive; Class 3.1; Class 3.2; Class 5; Class 6; and Class 7.  The total amount of Class 4 Allowed Claims is currently approximately $631,000 excluding the Allowed Claims, if any, of the holders of rejected leases and executory contracts and of the holders of Allowed Secured Claims that become entitled to distributions based on a deficiency claim after the disposition of collateral.

**CLASS 5:** Lucia Napoli Cosmeli.

This is the claim of Lucia Napoli Cosmeli ("Cosmeli"), the aunt of debtor Rosa Moller.  The Debtors believe that Cosmeli holds the equivalent of a life estate in the Chile Property under applicable law in the Republic of Chile, and the Debtors have promised to pay for Cosmeli's support and maintenance for her lifetime.  Cosmeli is 92 years old and the Chile Property is her personal residence.  The Debtors scheduled a claim in favor of Cosmeli, in the amount of $16,458 and state that the claim is secured by the Chile Property, but the Trustee believes based on available information that there is no legally enforceable claim in favor of Cosmeli against the Debtors or the Chile Property.

**CLASS 6:** Paul Sandner Moller & Rosa Maria Moller.

These are the interests of the Debtors that remain after payment of all Administrative Expense Claims, Post Confirmation Expenses, Priority Tax Claims, and all Allowed Claims.

**ARTICLE V.**
**PROCEDURES RELATING TO CLAIMS AND INTERESTS**

The following procedures and provisions, along with those more specific provisions set forth elsewhere in this Plan, govern the administration of claims.

Disputed Claim.  A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Plan Administrator or another party in interest has filed an objection; or (ii) no proof of claim has been filed and the Debtors have scheduled such claim as disputed, contingent, unliquidated, or unknown in amount.

  **Delay of Distribution on a Disputed Claim.** Except as specifically stated otherwise in this Plan, no distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order. The Plan Administrator shall withhold disbursement of payment on any disputed claim by retaining the amount of funds such claimant would receive if the claim were allowed in full. Upon final determination of such dispute, the Plan Administrator shall pay that claim amount allowed by the Court, pursuant to terms of the Plan.

  **Settlement of Disputed Claims.** The Plan Administrator will have the power and authority to settle and compromise any disputed claim against the Estate subject to Post-Confirmation Notice and the procedure set forth in Article IX, § "I" of this Plan, or, alternatively in the Plan Administrator's sole discretion, an order of the Court after hearing pursuant to Federal Rule of Bankruptcy Procedure 9019.

  **Claims Cap.** Claims properly scheduled or timely filed as the case may be shall be capped at the amount set forth in the schedules or proof of claim, as of the Confirmation Date. Unless specifically provided for under this Plan, no claim may thereafter be amended to increase the amount asserted against the Debtors or the Estate. This provision may be enforced by any party in interest.

  **De Minimis Distributions.** Notwithstanding anything to the contrary in this Plan, the Plan Administrator is not required to deliver a payment or distribution to the holder of an Allowed Claim if the amount of cash due is less than $10.00. The Plan Administrator may round all amounts for distribution to the nearest dollar.

## ARTICLE VI.
## MEANS FOR IMPLEMENTATION OF THE PLAN

A. Liquidation of Property.

  To fund disbursements to creditors under this Plan, the Plan Administrator is to liquidate property of the Estate. This will be done over a 36-month period following the Effective Date, by any means chosen by the Plan Administrator in his sole discretion, including with the assistance of agents or brokers. There shall be no minimum prices or

1  terms for liquidation of property of the Estate, and instead such prices and terms shall

2  be determined by the Plan Administrator in his discretion.

3      To the extent any property of the Estate has been abandoned pursuant to § 554

4  before the Confirmation Date, and to the extent any property is abandoned pursuant to

5  this Plan on or after the Confirmation Date, such property shall not be liquidated by the

6  Plan Administrator, but instead the Debtors shall be free to use and dispose of such

7  property as they see fit.

8      The Plan Administrator has authority to liquidate property of the Estate and

9  distribute the proceeds pursuant to the terms of this Plan, except to the extent such

10  property is determined to have an inconsequential or detrimental value to Estate.  The

11  Plan Administrator has authority to time such liquidation of assets at his sole discretion

12  during the 36 months following the Effective Date.  To "liquidate" assets shall mean to

13  reduce them to cash, by sale, by lease, or by any other disposition in the Plan

14  Administrator's discretion, and as to accounts receivable or other amounts owed to the

15  Debtors or the Estate, to "liquidate" shall also mean to collect the amount payable,

16  including by way of installment payments, judgment and enforcement of judgment, by

17  the sale or assignment of collection rights, or by way of settlement and compromise, all

18  in the Plan Administrator's discretion.

19      The Plan Administrator may continue to collect receivables as payment of same

20  becomes due, or, if the Plan Administrator receives an acceptable offer for discount or

21  purchase of any receivable, the Plan Administrator may discount or sell same.

22  However, the Plan Administrator may enter a compromise or sell a receivable involving

23  more than a $10,000 discount, or may sell any asset for an amount exceeding

24  $10,000 only after he (i) provides Post-Confirmation Notice of the terms of the

25  compromise or sale to the Parties Entitled to Notice, and (b) no party that receives such

26  notice within the ten days provided serves the Plan Administrator a written objection to

27  the proposed compromise or sale.  If the Case is at that time closed, such objection

28  shall be accompanied by a copy of a filed application of the objecting party to reopen

1  the Case, including evidence that any fee required to reopen the Case has been paid. If

2  such objection in proper form is timely received, the proposed compromise or sale may

3  be carried out only after Court approval obtained after hearing on no less than ten (10)

4  days' notice to the objecting party.

5      The assets of the Estate include generally, without limitation, the following:

6  claims; promissory notes; contracts; trust rights, whether express, formal, informal,

7  resulting, or other another or fiduciary theories; equitable interests held by, or any right

8  to, real or personal property or the payment of any monies held in the name of any

9  person or entity. Subject to abandonment, the assets of the Estate that the Plan

10  Administrator shall liquidate include, but are not limited to the following:

| Description of Assets |
| --- |
| Chile Property |
| Interest (stock) in Freedom Motors, Inc. |
| Interest (stock) in Moller International, Inc. |
| Interest in Milk Farm Assocs., L.P. |
| Rents receivable from Moller International, Inc. |
| Account receivable from Moller International, Inc. (loan payable) |
| Account receivable from Moller International, Inc. (deferred compensation) |
| Organic almond butter |
| Vehicle (unexempted equity is $2,450) |
| Patents |

23      The Plan Proponents believe that the most significant assets of the Estate

24  consists of claims against MII for (i) unpaid rent for use and occupancy of the

25  Commercial Property, (ii) for amounts due for pre-petition loans made by the Debtors to

26  MII; and (iii) for deferred compensation payable to Dr. Moller. These claims against MII

27  are described in greater detail in the Disclosure Statement. The Plan Proponents

28  anticipate that the services of Professionals may be used and Administrative Expense

1  Claims may be incurred in the prosecution of these claims against MII. As such, unpaid

2  court-approved administrative expenses incurred by Professionals in the Case shall be

3  paid from proceeds of the claim against MII before distribution on account of any

4  Allowed Claim secured by same (if any), pursuant to § 506(c) of the Code.

5  B.    Use of Creditor Account.

6      The Plan Administrator shall deposit into the Creditor Account all cash on hand

7  as of the Effective Date and all proceeds from liquidation of assets following the

8  Effective Date. Sale proceeds shall then be disbursed from the Creditor Account in

9  accordance with the provisions of this Plan. The Plan Administrator shall reserve in the

10  Creditor Account at all times an amount reasonably estimated to cover Administrative

11  Expense Claims and projected Post Confirmation Expenses.

12  C.    Distributions from the Creditor Account.

13      From the amounts reserved for Administrative Expense Claims and Post

14  Confirmation Expenses, the Plan Administrator shall first make distributions on account

15  of same. As and when a distribution on account of any Allowed Claim is due and

16  payable under this Plan, the Plan Administrator shall make such distribution from the

17  Creditor Account, in accordance with this Plan.

18  D.    Sales Under § 363 of the Code.

19      The Plan Administrator may elect to file a motion with the Court to obtain an

20  order pursuant to the provisions of § 363 of the Code, which shall apply to a sale of

21  property under this Plan in the same manner as if the Case were pending as a chapter

22  11 case before confirmation of any Plan of Reorganization and as if the Plan

23  Administrator were a chapter 11 trustee. To the extent any property is subject to liens,

24  interests, encumbrances, or the like, the Plan Administrator may sell such property free

25  and clear of such liens, interests, encumbrances, or the like, as provided under § 363(f)

26  of the Code; to the extent the Estate may hold less than the entire ownership interest in

27  any property, the Plan Administrator may sell such interest and the interest of any co-

28  / / /

1 owner(s) under § 363(g) of the Code; and the Court shall have jurisdiction to approve

2 such sale as provided under § 363 of the Code.

3 **E.** **Post-Confirmation Employment of Professionals.**

4 To the same extent he may have employed Professionals before confirmation of

5 the Plan, the Plan Administrator may employ professionals post-confirmation, except

6 that further Court approval for employment shall not be required so long as the

7 employment was approved by the Court before the Effective Date. The Plan

8 Administrator is specifically authorized to continue to employ counsel and accountants

9 to assist in the exercise of his rights and duties under this Plan, and to continue to

10 employ a securities broker in connection with the sale of securities (stock).

11 **F.** **Payment of Post-Confirmation Compensation of Professionals.**

12 The Plan Administrator, and all professionals employed by the Plan Administrator

13 post-confirmation, shall be entitled to compensation for services rendered and

14 reimbursement for costs incurred after the Effective Date. The Plan Administrator shall

15 be authorized to pay such compensation, which shall have a priority consistent with an

16 Administrative Expense Claim, only after he (i) provides Post-Confirmation Notice of the

17 proposed compensation, and (b) no party that receives such notice within the ten days

18 provided serves the Plan Administrator a written objection to the proposed

19 compensation. If the Case is at that time closed, such objection shall be accompanied

20 by a copy of a filed application of the objecting party to reopen the Case, including

21 evidence that any fee required to reopen the Case has been paid. If such objection in

22 proper form is timely received, the proposed compensation can be paid only after Court

23 approval is obtained after hearing on no less than ten (10) days' notice to the objecting

24 party. Notwithstanding the provisions above in regard to payment of compensation to

25 professionals, the Plan Administrator shall be authorized to compensate his securities

26 broker in the ordinary course from proceeds of sale, without need for Post-Confirmation

27 Notice.

28 / / /

**ARTICLE VII.**
**TREATMENT OF CLAIMS**

**Class 1** Allowed Claims (if any) shall be paid in full on the Effective Date or as soon as practical thereafter and as funds permit or as otherwise ordered by the Court. No Allowed Claim in a particular rank of priority shall be paid until each higher level of priority under § 507 of the Code is paid in full. To the extent insufficient funds exist to pay in full each holder of an Allowed Claim in a particular level of priority, available funds shall be distributed Pro Rata among those claim holders in that level of priority.

The **Class 2.1** Allowed Secured Claim of the County shall be treated as follows. The Commercial Property and the Agricultural Property shall be abandoned as of the Effective Date, and by way of an order of the Court entered in the Case on or about December 22, 2010, the Residential Property was abandoned by the Estate, as of December 9, 2010. To the extent applicable, the Confirmation Order will constitute an order granting relief from the automatic stay in favor of the Class 2.1 claimant to permit the Class 2.1 claimant to possess and dispose of the Commercial Property pursuant to applicable state law. The Class 2.1 Allowed Secured Claim is deemed satisfied in full upon abandonment of the Commercial Property. Confirmation of this Plan will not impair or otherwise affect the Class 2.1 claim holder's security interest in property of the Debtors.

The **Class 2.2** Allowed Claim of Exchange Bank shall be treated as follows. The Commercial Property shall be abandoned as of the Effective Date. To the extent applicable, the Confirmation Order will constitute an order granting relief from the automatic stay in favor of the Class 2.2 claimant to permit the Class 2.2 claimant to possess and dispose of the Commercial Property pursuant to state law. The Class 2.2 Allowed Secured Claim is deemed satisfied in full upon abandonment of the Commercial Property, and any deficiency claim in favor of the Class 2.2 claimant shall be a Class 4 general unsecured claim, on the condition, however, that the Class 2.2 claimant file a proof of claim in the Case (or amend an existing proof of claim, if any) to state

specifically the amount of its deficiency claim.  Should the Class 2.2 claim holder fail to file a proof of claim (or amend an existing proof of claim) in the Case within ninety (90) days of the Effective Date to state specifically the amount of any deficiency claim, the Class 2.2 claimant shall receive no distribution under this Plan.  Any proof of claim (or amendment, if applicable) that is timely filed as provided above shall be subject to objection by the Plan Administrator or other party entitled to make such objection under applicable rules.  Notwithstanding the above provisions, the Class 2.2 claimant and the Debtors shall be free to reach terms for the reaffirmation of the underlying obligation (subject to applicable bankruptcy law), and any payment due on the reaffirmed debt shall be made by the Debtors, not by the Plan Administrator or the Estate. Confirmation of this Plan shall not impair or affect the Class 2.2 claimant's security interest in the Commercial Property.

The **Class 2.3** Allowed Secured Claim of Sterling shall be treated as follows. The Commercial Property shall be abandoned as of the Effective Date.  The Confirmation Order will constitute an order granting relief from the automatic stay in favor of the Class 2.3 claimant to permit the Class 2.3 claimant to possess and dispose of the Commercial Property pursuant to state law.  The Class 2.3 Allowed Secured Claim is deemed satisfied in full upon abandonment of the Commercial Property, and any deficiency claim in favor of the Class 2.3 claimant shall be a Class 4 general unsecured claim, on the condition, however, that the Class 2.3 claimant file a proof of claim in the Case (or amend an existing proof of claim, if any) to state specifically the amount of its deficiency claim.  Should the Class 2.3 claim holder fail to file a proof of claim (or amend an existing proof of claim) in the Case within ninety (90) days of the Effective Date to state specifically the amount of any deficiency claim, the Class 2.3 claimant shall receive no distribution under this Plan.  Any proof of claim (or amendment, if applicable) that is timely filed as provided above shall be subject to objection by the Plan Administrator or other party entitled to make such objection under applicable rules.  Notwithstanding the above provisions, the Class 2.3 claimant and the

1 | Debtors shall be free to reach terms for the reaffirmation of the underlying obligation
2 | (subject to applicable bankruptcy law), and any payment due on the reaffirmed debt
3 | shall be made by the Debtors, not by the Plan Administrator or the Estate.
4 | Confirmation of this Plan shall not impair or affect the Class 2.3 claimant's security
5 | interest in the Commercial Property.
6 |   The **Class 2.4** Allowed Secured Claim of Morgan Stanley shall be treated as
7 | follows. By way of an order of the Court entered in the Case on or about December
8 | 22, 2010, the Residential Property was abandoned by the Estate, as of December 9,
9 | 2010. To the extent applicable, the Confirmation Order will constitute an order granting
10 | relief from the automatic stay in favor of the Class 2.4 claimant to permit the Class 2.4
11 | claimant to possess and dispose of the Residential Property pursuant to state law. The
12 | Class 2.4 Allowed Secured Claim is deemed satisfied in full as of the Effective Date,
13 | and any deficiency claim in favor of the Class 2.4 claimant shall be a Class 4 general
14 | unsecured claim, on the condition, however, that the Class 2.4 claimant file a proof of
15 | claim in the Case (or amend an existing proof of claim, if any) to state specifically the
16 | amount of its deficiency claim. Should the Class 2.4 claim holder fail to file a proof of
17 | claim (or amend an existing proof of claim) in the Case within ninety (90) days of the
18 | Effective Date to state specifically the amount of any deficiency claim, the Class 2.4
19 | claimant shall receive no distribution under this Plan. Any proof of claim (or
20 | amendment, if applicable) that is timely filed as provided above shall be subject to
21 | objection by the Plan Administrator or other party entitled to make such objection under
22 | applicable rules. Notwithstanding the above provisions, the Class 2.4 claimant and the
23 | Debtors shall be free to reach terms for the reaffirmation of the underlying obligation
24 | (subject to applicable bankruptcy law), and any payment due on the reaffirmed debt
25 | shall be made by the Debtors, not by the Plan Administrator or the Estate.
26 | Confirmation of this Plan shall not impair or affect the Class 2.4 claimant's security
27 | interest in the Residential Property.
28 | / / /

1        The **Class 2.5** Allowed Secured Claim of US Bank shall be treated as follows. By

2   way of an order of the Court entered in the Case on or about December 22, 2010, the

3   Residential Property was abandoned by the Estate, as of December 9, 2010. To the

4   extent applicable, the Confirmation Order will constitute an order granting relief from the

5   automatic stay in favor of the Class 2.5 claimant to permit the Class 2.5 claimant to

6   possess and dispose of the Residential Property pursuant to state law. The Class 2.5

7   Allowed Secured Claim is deemed satisfied in full as of the Effective Date, and any

8   deficiency claim in favor of the Class 2.5 claimant shall be a Class 4 general unsecured

9   claim, on the condition, however, that the Class 2.5 claimant file a proof of claim in the

10   Case (or amend an existing proof of claim, if any) to state specifically the amount of its

11   deficiency claim. Should the Class 2.5 claim holder fail to file a proof of claim (or

12   amend an existing proof of claim) in the Case within ninety (90) days of the Effective

13   Date to state specifically the amount of any deficiency claim, the Class 2.5 claimant

14   shall receive no distribution under this Plan. Any proof of claim (or amendment, if

15   applicable) that is timely filed as provided above shall be subject to objection by the Plan

16   Administrator or other party entitled to make such objection under applicable rules.

17   Notwithstanding the above provisions, the Class 2.5 claimant and the Debtors shall be

18   free to reach terms for the reaffirmation of the underlying obligation (subject to

19   applicable bankruptcy law), and any payment due on the reaffirmed debt shall be made

20   by the Debtors, not by the Plan Administrator or the Estate. Confirmation of this Plan

21   shall not impair or affect the Class 2.5 claimant's security interest in the Residential

22   Property.

23        The **Class 2.6** Allowed Secured Claim of BAFC shall be treated as follows. By

24   way of an order of the Court entered in the Case on or about December 22, 2010, the

25   Residential Property was abandoned by the Estate, as of December 9, 2010. To the

26   extent applicable, the Confirmation Order will constitute an order granting relief from the

27   automatic stay in favor of the Class 2.6 claimant to permit the Class 2.6 claimant to

28   possess and dispose of the Residential Property pursuant to state law. The Class 2.6

Allowed Secured Claim is deemed satisfied in full as of the Effective Date, and any deficiency claim in favor of the Class 2.6 claimant shall be a Class 4 general unsecured claim, on the condition, however, that the Class 2.6 claimant file a proof of claim in the Case (or amend an existing proof of claim, if any) to state specifically the amount of its deficiency claim. Should the Class 2.6 claim holder fail to file a proof of claim (or amend an existing proof of claim) in the Case within ninety (90) days of the Effective Date to state specifically the amount of any deficiency claim, the Class 2.6 claimant shall receive no distribution under this Plan. Any proof of claim (or amendment, if applicable) that is timely filed as provided above shall be subject to objection by the Plan Administrator or other party entitled to make such objection under applicable rules. Notwithstanding the above provisions, the Class 2.6 claimant and the Debtors shall be free to reach terms for the reaffirmation of the underlying obligation (subject to applicable bankruptcy law), and any payment due on the reaffirmed debt shall be made by the Debtors, not by the Plan Administrator or the Estate. Confirmation of this Plan shall not impair or affect the Class 2.6 claimant's security interest in the Residential Property.

The **Class 2.7** Allowed Secured Claim of Schlechter shall be treated as follows. By way of an order of the Court entered in the Case on or about December 22, 2010, the Residential Property was abandoned by the Estate, as of December 9, 2010. By way of an order of the Court entered in the Case on or about December 22, 2010, the Residential Property was abandoned by the Estate, as of December 9, 2010. To the extent applicable, the Confirmation Order will constitute an order granting relief from the automatic stay in favor of the Class 2.7 claimant to permit the Class 2.7 claimant to possess and dispose of the Residential Property pursuant to state law. The Class 2.7 Allowed Secured Claim is deemed satisfied in full as of the Effective Date, and any deficiency claim in favor of the Class 2.7 claimant shall be a Class 4 general unsecured claim, on the condition, however, that the Class 2.7 claimant file a proof of claim in the Case (or amend an existing proof of claim, if any) to state specifically the amount of its

1    deficiency claim. Should the Class 2.7 claim holder fail to file a proof of claim (or

2    amend an existing proof of claim) in the Case within ninety (90) days of the Effective

3    Date to state specifically the amount of any deficiency claim, the Class 2.7 claimant

4    shall receive no distribution under this Plan. Any proof of claim (or amendment, if

5    applicable) that is timely filed as provided above shall be subject to objection by the Plan

6    Administrator or other party entitled to make such objection under applicable rules.

7    Notwithstanding the above provisions, the Class 2.7 claimant and the Debtors shall be

8    free to reach terms for the reaffirmation of the underlying obligation (subject to

9    applicable bankruptcy law), and any payment due on the reaffirmed debt shall be made

10   by the Debtors, not by the Plan Administrator or the Estate. Confirmation of this Plan

11   shall not impair or affect the Class 2.7 claimant's security interest in the Residential

12   Property.

13        The **Class 2.8** Allowed Secured Claim of WaMu shall be treated as follows. By

14   way of an order of the Court entered in the Case on or about May 4, 2011, the

15   Agricultural Property was abandoned by the Estate. To the extent applicable, the

16   Confirmation Order will constitute an order granting relief from the automatic stay in

17   favor of the Class 2.8 claimant to permit the Class 2.8 claimant to possess and dispose

18   of the Agricultural Property pursuant to state law. The Class 2.8 Allowed Secured

19   Claim is deemed satisfied in full as of the Effective Date, and any deficiency claim in

20   favor of the Class 2.8 claimant shall be a Class 4 general unsecured claim, on the

21   condition, however, that the Class 2.8 claimant file a proof of claim in the Case (or

22   amend an existing proof of claim, if any) to state specifically the amount of its

23   deficiency claim. Should the Class 2.8 claim holder fail to file a proof of claim (or

24   amend an existing proof of claim) in the Case within ninety (90) days of the Effective

25   Date to state specifically the amount of any deficiency claim, the Class 2.8 claimant

26   shall receive no distribution under this Plan. Any proof of claim (or amendment, if

27   applicable) that is timely filed as provided above shall be subject to objection by the Plan

28   Administrator or other party entitled to make such objection under applicable rules.

1 Notwithstanding the above provisions, the Class 2.8 claimant and the Debtors shall be

2 free to reach terms for the reaffirmation of the underlying obligation (subject to

3 applicable bankruptcy law), and any payment due on the reaffirmed debt shall be made

4 by the Debtors, not by the Plan Administrator or the Estate. Confirmation of this Plan

5 shall not impair or affect the Class 2.8 claimant's security interest in the Agricultural

6 Property.

7 The **Class 2.9** Allowed Secured Claim of Capital shall be treated as follows. By

8 way of an order of the Court entered in the Case on or about May 4, 2011, the

9 Agricultural Property was abandoned by the Estate. To the extent applicable, the

10 Confirmation Order will constitute an order granting relief from the automatic stay in

11 favor of the Class 2.9 claimant to permit the Class 2.9 claimant to possess and dispose

12 of the Agricultural Property pursuant to state law. The Class 2.9 Allowed Secured

13 Claim is deemed satisfied as of the Effective Date, and any deficiency claim in favor of

14 the Class 2.9 claimant shall be a Class 4 general unsecured claim, on the condition,

15 however, that the Class 2.9 claimant file a proof of claim in the Case (or amend an

16 existing proof of claim, if any) to state specifically the amount of its deficiency claim.

17 Should the Class 2.9 claim holder fail to file a proof of claim (or amend an existing proof

18 of claim) in the Case within ninety (90) days of the Effective Date to state specifically

19 the amount of any deficiency claim, the Class 2.9 claimant shall receive no distribution

20 under this Plan. Any proof of claim (or amendment, if applicable) that is timely filed as

21 provided above shall be subject to objection by the Plan Administrator or other party

22 entitled to make such objection under applicable rules. Notwithstanding the above

23 provisions, the Class 2.9 claimant and the Debtors shall be free to reach terms for the

24 reaffirmation of the underlying obligation (subject to applicable bankruptcy law), and any

25 payment due on the reaffirmed debt shall be made by the Debtors, not by the Plan

26 Administrator or the Estate. Confirmation of this Plan shall not impair or affect the

27 Class 2.9 claimant's security interest in the Agricultural Property.

28 / / /

1       The **Class 2.10** Allowed Secured Claim of Foss shall be treated as follows.  By

2  way of an order of the Court entered in the Case on or about May 4, 2011, the

3  Agricultural Property was abandoned by the Estate.  To the extent applicable, the

4  Confirmation Order will constitute an order granting relief from the automatic stay in

5  favor of the Class 2.10 claimant to permit the Class 2.10 claimant to possess and

6  dispose of the Agricultural Property pursuant to state law.  The Class 2.10 Allowed

7  Secured Claim is deemed satisfied in full as of the Effective Date, and any deficiency

8  claim in favor of the Class 2.10 claimant shall be a Class 4 general unsecured claim, on

9  the condition, however, that the Class 2.10 claimant file a proof of claim in the Case (or

10  amend an existing proof of claim, if any) to state specifically the amount of its

11  deficiency claim.  Should the Class 2.10 claim holder fail to file a proof of claim (or

12  amend an existing proof of claim) in the Case within ninety (90) days of the Effective

13  Date to state specifically the amount of any deficiency claim, the Class 2.10 claimant

14  shall receive no distribution under this Plan.  Any proof of claim (or amendment, if

15  applicable) that is timely filed as provided above shall be subject to objection by the Plan

16  Administrator or other party entitled to make such objection under applicable rules.

17  Notwithstanding the above provisions, the Class 2.10 claimant and the Debtors shall be

18  free to reach terms for the reaffirmation of the underlying obligation (subject to

19  applicable bankruptcy law), and any payment due on the reaffirmed debt shall be made

20  by the Debtors, not by the Plan Administrator or the Estate.  Confirmation of this Plan

21  shall not impair or affect the Class 2.10 claimant's security interest in the Agricultural

22  Property.

23       The **Class 2.11** Allowed Secured Claim of House shall be treated as follows.  By

24  way of an order of the Court entered in the Case on or about May 4, 2011, the

25  Agricultural Property was abandoned by the Estate.  To the extent applicable, the

26  Confirmation Order will constitute an order granting relief from the automatic stay in

27  favor of the Class 2.11 claimant to permit the Class 2.11 claimant to possess and

28  dispose of the Agricultural Property pursuant to state law.  The Class 2.11 Allowed

1    Secured Claim is deemed satisfied in full as of the Effective Date, and any deficiency

2    claim in favor of the Class 2.11 claimant shall be a Class 4 general unsecured claim, on

3    the condition, however, that the Class 2.11 claimant file an amendment to Claim No.

4    16 to state specifically the amount of the deficiency claim. Should the Class 2.11 claim

5    holder fail to file an amendment to Claim No. 16 in the Case within ninety (90) days of

6    the Effective Date to state specifically the amount of any deficiency claim, the Class

7    2.11 claimant shall receive no distribution under this Plan. Any proof of claim (or

8    amendment, if applicable) that is timely filed as provided above shall be subject to

9    objection by the Plan Administrator or other party entitled to make such objection under

10    applicable rules. Notwithstanding the above provisions, the Class 2.11 claimant and

11    the Debtors shall be free to reach terms for the reaffirmation of the underlying obligation

12    (subject to applicable bankruptcy law), and any payment due on the reaffirmed debt

13    shall be made by the Debtors, not by the Plan Administrator or the Estate.

14    Confirmation of this Plan shall not impair or affect the Class 2.11 claimant's security

15    interest in the Agricultural Property.

16    The **Class 2.12** Allowed Secured Claim of BMW shall be treated as follows. The

17    Class 2.12 claim holder shall be entitled to no payments or distributions under the Plan.

18    The Class 2.12 claim holder shall apply all post-petition payments received from the

19    Debtor in full and final satisfaction of the Class 2.12 Allowed Secured Claim.

20    As to **Class 3** Allowed Claims, this Plan provides for a specific deadline for the

21    holders of rejected executory contracts and unexpired leases, if any, to file a proof of

22    claim for damages arising from the rejection, after which deadline such claims are

23    barred. General provisions for executory contracts and unexpired leases are set forth in

24    Article XI of this Plan. Provisions for specific executory contracts and unexpired leases

25    are set forth immediately below.

26    The **Class 3.1** Allowed Claim of Foss shall be treated as follows.

27    Specifically, through this Plan, the real property lease with Foss is deemed rejected as

28    of the Effective Date.

1  The **Class 3.2** Allowed Claim of MII shall not be impaired by this Plan.

2  Specifically, through this Plan, the real property lease with MII is deemed assumed as of

3  the Effective Date.

4  **Class 4** Allowed Claims shall be paid as follows: After full payment of all

5  Administrative Expense claims, Priority Tax Claims, and Class 1 Claims, the Plan

6  Administrator shall, on a bi-annual basis, distribute remaining funds in the Creditor

7  Account Pro Rata, to the holders of Class 4 Allowed Claims. The first disbursement

8  from the Creditor Account on account of Class 4 Allowed Claims shall be made within

9  sixty (60) days following full payment of all Administrative Expense claims, Priority Tax

10  Claims, and Class 1 Claims, and the Plan Administrator shall continue such

11  disbursements each six calendar months thereafter, until such time as the Class 4

12  Allowed Claims are paid in full, plus accrued interest at the rate of 2% per year from

13  the Effective Date.

14  The **Class 5** Allowed Claim shall be unimpaired. Confirmation of the Plan

15  shall not impair or affect Cosmeli's interest, if any, in the Chile Property.

16  **Class 6** interest of the Debtors shall be treated as follows. Upon full

17  payment of all Administrative Expense Claims, Post-Confirmation Expenses, all Priority

18  Tax Claims, and all Allowed Claims (including Class 1 and Class 4), then any remaining

19  assets of the Estate shall be at that time deemed abandoned and shall be distributed to

20  the Debtors. Upon confirmation of the Plan, the following assets, in addition to those

21  assets subject of abandonment under other provisions of this Plan, the Debtors'

22  interests in the following assets shall be deemed abandoned to the Debtors pursuant to

23  § 554 of the Code: (i) household goods valued at $1,000; (ii) computer and TV valued

24  at $5,000; (iii) clothes valued at $3,000; (iv) jewelry valued at $2,000; and (v) Quail

25  Oaks Ranch. Should the Debtors have claimed as exempt any value in any asset to be

26  liquidated under this Plan, the Debtors will receive the value of their claimed exemption

27  promptly after the Plan Administrator liquidates the relevant asset; notwithstanding the

28  foregoing, however, the Debtors shall be authorized to pay the Plan Administrator the

| | |
|---|---|
| 1 | sum of $2,450, the unexempted equity in the Vehicle, in lieu and instead of liquidation |
| 2 | of the Vehicle by the Plan Administrator. |

### ARTICLE VIII.
### NON-IMPAIRED CLASSES

Pursuant to § 1123(a) of the Code, the Plan Proponents specify that the following classes of claims or interests are not impaired under the Plan: Class 3.2; Class 5; and Class 6. The following classes are impaired under the Plan: Class 1; Class 2.1 through 2.12, inclusive; Class 3.1, and Class 4 (and all subclasses thereof, as applicable).

### ARTICLE IX.
### AUTHORITY AND DUTIES OF THE PLAN ADMINISTRATOR

A.    The Plan Administrator's Authority Generally.

The Plan Administrator will serve the Estate post-confirmation. The Plan Administrator will have the powers and authority set forth in this Plan and the Confirmation Order, and in addition the Plan Administrator will retain post-confirmation all rights, powers, and authorities of a trustee under chapter 11 of the Code and will be authorized to employ counsel and other professionals post-confirmation. Any orders authorizing employment of professionals by the Trustee obtained before confirmation of the Plan shall be effective and in favor of the Plan Administrator post-confirmation.

Expressly incorporated into this Plan and granted to the Plan Administrator are the powers of a chapter 11 trustee, including as follows:

1.    Sections 704(1), 704(2), 705(5), 704(7), 1106(a)(6), and 1106(a)(7) of the Code;

2.    The powers necessary to perform this Plan, including but not limited to execution of any documents relating to the sale, transfer, or reconveyance of assets of the Estate, the power to sell property under § 363 of the Code, including pursuant to § 363(f) and (h) of the Code, and the disbursement of any monies relating to any assets of the Estate;

1        3.      Those additional powers that the court may authorize the Plan

2    Administrator to exercise by further order;

3        4.      Retaining and compensating from property of the Estate such

4    professionals and third parties whose employment is reasonably necessary to perform

5    this Plan.

6        The Plan Administrator is upon confirmation of the Plan authorized to settle

7    and/or compromise any cause of action or claim that the Estate may have, including but

8    not limited to claims under § 547 and § 548 of the Code, subject to Post-Confirmation

9    Notice and the procedure set forth in Article IX, § "I" of this Plan, or alternatively an

10   order of the Court after hearing pursuant to Federal Rule of Bankruptcy Procedure 9019.

11       The powers of the Plan Administrator shall be exercised as provided in this Plan,

12   or through a post-confirmation order of the Court for the sale of real or personal

13   property under the Plan, after request by the Plan Administrator.  Notwithstanding the

14   above, nothing herein shall require the Plan Administrator to obtain any post-

15   confirmation orders or authorization for the sale of any real or personal property under

16   this Plan.

17   B.   Reports and Records.

18       After confirmation of this Plan, the Plan Administer shall pay from Estate funds

19   to the United States Trustee, for deposit into the Treasury, those Quarterly Fees due

20   under 28 U.S.C. § 1930(a)(6) for each quarter and fraction thereof, until the Case is

21   closed by entry of a final decree, converted, or dismissed.  At the end of each calendar

22   quarter, the Plan Administrator shall also file with the Court, and serve upon the United

23   States Trustee, a post-confirmation report which includes the no less than the following

24   information pertinent to the Case:  (1) whether the plan confirmation order is final; (2)

25   whether deposits, if any, required by this Plan have been made; (3) whether property, if

26   any, to be transferred under this Plan has been transferred; (4) whether the Debtor has

27   under this Plan assumed management of the property dealt with by the Plan; (5)

28   whether Plan disbursements have commenced; (6) whether Quarterly Fees due to the

United States Trustee have been paid; and (7) whether all motions, contested matters, and adversary proceedings have been finally resolved. At the time he serves the U.S. Trustee, the Plan Administrator shall serve copies of each post-confirmation report on those parties that have provided him or his counsel with a prior written request for service of same.

The Plan Administrator shall maintain accurate books and records concerning the Estate and the Creditor Account. The Plan Administrator shall maintain a record of all distributions from the Creditor Account, with respect to each distribution, including the name and address of the holder of the Allowed Claim, the amount and nature of the distribution, the claim number, if applicable, and the amount of the Allowed Claim.

Promptly after making the final distribution from the Creditor Account, the Plan Administrator shall serve his final accounting for the Estate on the Parties Entitled to Notice. Absent the service of written objection on the Plan Administrator and counsel for the Plan Administrator within twenty (20) days of service of the final accounting, the Plan Administrator shall be discharged of his duties under this Plan. If the Case is open at the time of service of his final accounting, the Plan Administrator may request that the Court enter a final decree in the Case.

C.    Reliance by Third Parties on Plan Administrator's Authority.

No entity acting in good faith and dealing with the Plan Administrator with respect to any property of the Estate or the Plan Administrator's performance of his powers or duties under this Plan shall be required to ascertain the authority of the Plan Administrator, or to be responsible in any way for the proper application of funds or properties paid or delivered to the Plan Administrator, and any such entity may deal with the Plan Administrator as though he were the unconditional owner of the assets of the Estate. This provision does not release or limit the obligations of any third party to repay or disgorge any monies or property which may have been transferred by the Plan Administrator by error of the Plan Administrator or someone acting on the Plan

/ / /

1 | Administrator's behalf, such as by error through miscomputation of amount or

2 | misidentification of creditor or recipient.

3 | D.     Bond.

4 | Upon confirmation of this Plan, the Trustee's bond shall be discharged.  As long

5 | as Jon Tesar serves as Plan Administrator, he shall be entitled to serve without a bond.

6 | Any successor Plan Administrator shall maintain in force during the duration of the Plan

7 | a fidelity bond in an amount not less than the sum of the balance in the Creditor

8 | Account.  The bond premium, if any, shall be paid out of the Creditor Account.

9 | E.     Limitation on Liability of the Plan Administrator.

10 | The Plan Administrator shall have no liability for any error of judgment made in

11 | good faith in performing his duties and exercising his powers under this Plan, and the

12 | Plan Administrator shall be liable only for damages arising from his wilful misconduct.

13 | The Plan Administrator shall not be liable for any action taken or omitted in good faith

14 | and believed by him to be authorized within the discretion, rights, or powers conferred

15 | upon him by this Plan.  No provisions of this Plan shall require the Plan Administrator to

16 | expend or furnish his own funds, or otherwise incur personal financial liability in the

17 | performance of any duty under this Plan or in the exercise of any of his rights or powers

18 | hereunder.  The Plan Administrator may rely, without further inquiry, on any writing

19 | delivered to him under this Plan which he believes to be genuine and delivered to him by

20 | the proper person, as well as the books and records of the Estate and the Debtors,

21 | either of them, or their respective agents.

22 | F.     Plan Administrator May Act for the Debtors.

23 | Any provision of this Plan or the Code which provides for consent to be given,

24 | an act to be undertaken, or an agreement to be reached by the Debtors shall be read to

25 | permit after the Effective Date such consent to be given by, act to be undertaken by, or

26 | agreement to be reached with, the Plan Administrator.

27 | / / /

28 | / / /

G.      Post-Confirmation Compensation of Plan Administrator.

        The Plan Administrator shall receive from the Creditor Account, as presumptively reasonable compensation for post-confirmation services rendered, a fee of $250 per hour without regard to § 326 of the Code, and shall be entitled to reimbursement of necessary and reasonable expenses from the Creditor Account.

H.      Compliance With Tax Requirements.

        To the extent applicable in connection with the Plan, the Plan Administrator shall comply with all tax and reporting requirements imposed on him by any governmental unit, and all distributions made under the Plan shall be subject to, and reduced by, such tax and reporting requirements. The Plan Administrator shall be authorized to take any action that may be necessary or appropriate in order to comply with such tax and reporting requirements, including but not limited to requiring recipients to fund the payment of withholding as a condition to delivery. Notwithstanding any other provision of this Plan, each person or entity receiving a distribution under this Plan shall have sole responsibility for the satisfaction and payment of any tax obligations imposed on it by any governmental unit on account of such distribution, including income withholding and other tax obligations.

I.      Payment of Post-Confirmation Expenses; Payment of Post-Confirmation Settlements and Compromises.

        The Plan Administrator may pay Post-Confirmation Expenses from the Creditor Account, and may enter into and perform settlements and compromises regarding allowance of claims and any other matter concerning administration of the Estate, only after he (i) provides Post-Confirmation Notice of the terms of the transaction, expense to be paid, or terms of settlement or compromise to the Parties Entitled to Notice, and (b) no party that receives such notice within the ten days provided serves the Plan Administrator a written objection to the terms or payment. If the Case is at that time closed, such objection shall be accompanied by a copy of a filed application of the objecting party to reopen the Case, including evidence that any fee required to reopen

1  the Case has been paid.  If such objection in proper form is timely received, the

2  proposed transaction, payment, or settlement or compromise may be carried out only

3  after Court approval is obtained after hearing on no less than ten (10) days' notice to

4  the objecting party.

## ARTICLE X.
## DUTIES OF THE DEBTORS

7  The Plan Administrator shall monitor and direct the efforts of the Debtors, who

8  will, to the extent reasonably required by the Plan Administrator and consistent with the

9  terms of this Plan, assist the Plan Administrator in implementation of the Plan.  The

10  Debtors shall give the Trustee their full and reasonable cooperation, and shall, without

11  limitation, respond promptly and fully to the Plan Administrator's inquiries in the course

12  of administration of the Case and give the Plan Administrator ready access to their

13  books and records, and, to the books and records of FM and MI.

14  As the parties that control MI and FMI, the Debtors shall, subject to their duties

15  as such parties under applicable state law, see that MI and FMI repay their obligations

16  to the Estate as promptly as is necessary for the Plan Administrator, in turn, to use the

17  proceeds of such payment for timely distributions under this Plan.

18  As a condition of entry of the Confirmation Order, the Debtors shall perform the

19  following acts:  (i) the Debtors shall cause MII to execute and deliver to the Plan

20  Administrator a promissory note, in a form approved by the Plan Administrator, in favor

21  of the Debtors and/or the Estate and in the aggregate amount owed by MII to the

22  Debtors and/or the Estate for unpaid rent, money lent, and any other amounts owed to

23  the Debtors as of the date of the promissory note; (ii) the Debtors shall cause MII and

24  FMI to execute and deliver to the Plan Administrator a security agreement under which

25  the personal property of MII and FMI secures the obligation of MII under the promissory

26  note delivered to the Plan Administrator, and any additional amounts that may become

27  due and owing by MII and/or FMI, including rent as it comes due and remains unpaid.

28  / / /

1    By the filing of and confirmation of this Plan, the Debtors agree that they shall

2    turn over to the Plan Administrator, from any escrow for sale, the net proceeds of any

3    sale of the Agricultural Property and/or of any sale of the Commercial Property, after

4    payment of all liens of record and all ordinary costs of sale, notwithstanding prior

5    abandonment of these properties by the Estate.

6

7    **ARTICLE XI.**
     **EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

8    On the Confirmation Date, all executory contracts and unexpired leases entered

9    into by the Debtors or either of them before the Petition Date which have not been

10   rejected by operation of law, assumed or rejected pursuant to a prior order of the Court,

11   or which are not subject to a motion already filed with the Court, except for those

12   executory contracts and unexpired leases, if any, identified as subject to a Class 3 claim

13   and as being assumed under this Plan, are rejected upon confirmation of this Plan.

14   Proofs of Claim for those claims arising from the rejection of any executory contracts

15   and unexpired leases must be filed with the Court no later than thirty (30) days

16   following the Effective Date.  Failure to timely file such proofs of claim shall result in

17   disallowance of such claims without further order of the Court.

18

19   **ARTICLE XII.**
     **EFFECT OF CONFIRMATION**

20   <u>No revesting</u>.  Notwithstanding confirmation of this Plan, no non-exempt

21   property of the Estate will revest in the Debtors, and the Estate shall continue in

22   existence to be administered by the Plan Administrator pursuant to this Plan.  The

23   Estate shall continue in existence under the control of the Plan Administrator, and the

24   Estate shall retain all tax benefits, losses, and other attributes for the filing of post-

25   confirmation tax returns.

26   Notwithstanding § 1115(a)(2) of the Code, which has been read to provide that

27   all earnings from services performed by a debtor after commencement of a chapter 11

28   case but before the case is closed are property of the bankruptcy estate, the post-

confirmation earnings from services performed by the Debtors shall be excluded from
the Estate and the Debtors therefore may use such earnings, and social security
benefits, as they see fit.

Fund of the Estate:  As of the Effective Date, all funds of the Estate shall be
deemed unencumbered, and any depository of funds of the Estate, whether or not held
in accounts designated as "blocked" or otherwise subject to further order of the Court,
may release funds to the Plan Administrator upon request of the Plan Administrator.

Automatic Stay.  Except as specifically stated in this Plan or as relief may later
be granted by the Court, notwithstanding confirmation of this Plan the automatic stay
provisions of § 362 shall continue in full force and effect as a post-confirmation stay.
Entry of the Confirmation Order shall serve to grant relief from the automatic stay, in
favor of all parties to the Ag Property Litigation, solely to permit the relevant court to
determine the parties' respective rights to the property subject of the litigation, and to
fix any monetary claim against the Debtors; the parties to the Ag Property Litigation
shall not, however, have relief from the automatic stay to enforce any rights against the
property of the Estate or the Debtors.

Cure Provision.  Confirmation of this Plan shall constitute a restructuring of the
Debtors' and the Estate's obligations to claim holders affected by this Plan, and shall be
deemed to cure any and all defaults existing as of the Effective Date with respect to the
Debtors' and the Estate's obligations, except that confirmation shall not cure any
defaults for which a Notice of Default was given to commence non-judicial foreclosure
proceedings under applicable state law.

Nonrecourse Debt.  To the extent the Debtors' pre-petition obligations are
nonrecourse as to the Debtors under applicable nonbankruptcy law, they shall remain
nonrecourse.  To the extent a creditor retains a lien under this Plan, that creditor retains
all rights provided by such lien under applicable nonbankruptcy law.

/ / /

/ / /

**ARTICLE XIII.**
**DISCHARGE AND CLOSING**

The completion of disbursements by the Plan Administrator under this Plan and entry of an order of discharge (but not solely entry of the order confirming this Plan) shall serve to discharge the Debtors from all debts provided for in this Plan, whether or not the creditor files a proof of claim, whether or not the creditor accepts or rejects the Plan, and whether or not the creditor's claim is allowed, except as specifically provided in § 1141 of the Code.

The rights afforded by this Plan and the treatment afforded all claims by this Plan shall be in full exchange for, and in complete satisfaction, discharge, and release of all claims and interests of any kind or nature, whether known or unknown, matured or contingent, liquidated or unliquidated, existing, arising or accruing, whether or not yet due, before the Effective Due, including without limitation claims accruing on or after the Petition Date, against the Estate or any assets or property of the Estate.

Notwithstanding the continuation of the Estate after confirmation of the Plan, nothing in this Plan shall be construed to prohibit the Plan Administrator or other party in interest from requesting and obtaining an order administratively closing the Case under § 350(a) of the Code, subject to being reopened on the motion of any party in interest, to determine any issue, claim, objection to claim, or right under this Plan, or for other cause as set forth in § 350(b) of the Code. Even should disbursements under the Plan remain to be made at the time a request is made to close the Case, the Court may determine the Case fully administered under § 350(a) of the Code and therefore may close the Case, so long as there is good cause for the closing of the Case, such as to avoid unnecessary administrative expense.

Promptly after completion of disbursements under this Plan, the Plan Administrator shall provide Post-Confirmation Notice of the same. The Debtors shall then if necessary request that the Case be reopened and shall promptly request entry of an order of discharge after hearing under § 1141(d)(5) of the Code, and the Plan

1    Administrator shall file a Final Report and Account for the Case promptly after the Case

2    is reopened. Should U.S. Trustee's Fees become due and payable as a consequence of

3    the reopening of the Case at the Debtors' request, the Debtors and not the Estate or the

4    Plan Administrator shall be liable for payment of same.

### ARTICLE XIV.
### REMEDIES FOR DEFAULTS UNDER THE PLAN

7    In the event there is a material default in the performance of the terms of this

8    Plan, by either the Debtors or by the Plan Administrator, any party in interest, including

9    holders of Allowed Claims, may move the Court for conversion of the Case to a case

10    under chapter 7 of the Code or for dismissal of the Case as provided in § 1112(b) of

11    the Code.

### ARTICLE XV.
### MODIFICATION OF THE PLAN

14    The Plan Proponents may amend or modify the Plan at any time before

15    confirmation of the Plan without prior notice, so long as the Court determines in

16    accordance with Federal Rule of Bankruptcy Procedure 3019 that the proposed

17    modification does not materially or adversely affect the interest of any holder of any

18    claim or equity security interest. If the Court makes such a determination and approves

19    such modification, it shall be deemed to have been accepted by the holders of claims or

20    equity security interests who have previously accepted the Plan.

### ARTICLE XVI.
### OTHER PROVISIONS

23    A.    Retention of Jurisdiction.

24    After confirmation of this Plan, the Court shall retain exclusive jurisdiction of all

25    issues relating to the performance of this Plan and the conduct of the Trustee, the Plan

26    Administrator, and the Debtors under this Plan, and any professionals engaged by the

27    Plan Administrator, the Trustee, or the Debtors. After confirmation of this Plan, the

28    / / /

1  Court shall retain exclusive jurisdiction over all property of the Estate, and specifically

2  over all assets to be liquidated pursuant this Plan.

3  Upon confirmation, the Plan Administrator shall retain the avoiding powers of §§

4  544, 545, 547, 548, and 553 of the Code, and may commence or continue

5  prosecution of any adversary proceedings or motions necessary or appropriate to

6  implement such retained powers.  Confirmation of this Plan shall not impair or cause

7  waiver of any claims of the Debtors against third parties, including but not limited to

8  any claims described in the schedules filed by the Debtors in the Case.

9  Following confirmation of this Plan, the Court shall retain jurisdiction of the Case

10  for the following purposes:

11  (1)  Modification of the Plan pursuant to § 1127(b) of the Code;

12  (2)  Determination of the allowance or disallowance of claims.  The

13  Plan Administrator shall retain post-confirmation the ability to object to the allowance of

14  any claim.  The Court shall retain jurisdiction to determine the allowance or disallowance

15  of claims;

16  (3)  Determination of any adversary proceedings or motions brought by

17  the Plan Administrator in the exercise of his avoiding powers;

18  (4)  Fixing allowance of compensation and other administrative

19  expenses;

20  (5)  Collection of money or property due to the Debtors or the Estate;

21  (6)  Determination of disputes involving the Debtors which pertain to

22  events or transactions which occurred before the Effective Date including resolution of

23  any pending adversary proceedings;

24  (7)  Value the Debtors' or the Estate's property and determination of

25  the allowed amount of a claim secured by property and avoidance of liens against

26  property to the extent the amount of the claim exceeds the value of the collateral

27  securing the claim pursuant to § 506 of the Code;

28  / / /

1        (8)    Any other purposes consistent with the laws of the United States,

2  until the Plan has been fully consummated.

3        In addition, the Court shall retain jurisdiction to order the sale of property free

4  and clear of liens, encumbrances, interests, and the like, and the sale of property and all

5  interests where the Estate holds only a fractional interest, pursuant to § 363 of the

6  Code or applicable non-bankruptcy law; and to enforce and determine al rights and

7  interests relating to property of the Estate, including easements, covenants, restrictions,

8  conditions, and interests in any such property.

9  B.    Preservation and Assignment of Causes of Action.  As of the Effective Date,

10  each and every claim, right, cause of action, claim for relief, right to set off, and

11  entitlement held by the Estate or the Debtors, whether arising under §§ 502, 506, 510,

12  541, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, 552, or 553 of the Code,

13  other than those waived or released by express terms of this Plan or the Confirmation

14  Order, shall be deemed fully preserved and vested in the Plan Administrator.

15  C.    Records.

16        The Plan Administrator shall maintain accurate books and records of the monies

17  and properties received from the Estate, and of all payments and disbursements made

18  for expenses of the estate, on Administrative Expense Claims, and on Allowed Claims.

19  D.    Final Accounting and Discharge of Plan Administrator.

20        Upon sale or abandonment of all property of the Estate, and final disbursement

21  from the Creditor Account, the Plan Administrator shall file with the Court a Final Report

22  and Account.  Upon order of the Court, the Plan Administrator shall be discharged from

23  his duties under this Plan.

24  E.    Abandonment of Property.

25        The Plan Administrator is expressly authorized to abandon, as that term is

26  applied under § 554 of the Code, any property of the Estate that he determines to be

27  burdensome or of inconsequential value.  Such abandonment shall be effective upon

28  any of the following events, in the discretion of the Trustee, without need for further

1  notice or hearing: (i) the filing with the Court of a Notice of Abandonment describing

2  such property, with service of a copy on Parties Entitled to Notice, except that if the

3  Case is closed, no Notice of Abandonment need be filed with the Court; or (ii) as to real

4  property, the recordation of a Notice of Abandonment with the Office of the County

5  Recorder for the county in which the real property is situated with service of a copy on

6  Parties Entitled to Notice.

7      No authorization of the Court or notice to any entity shall be required for

8  abandonment of any asset to be effective, but the Plan Administrator may seek an

9  order of abandonment from the Court pursuant to applicable rules of procedure, should

10  he determine so doing to be appropriate.

11  F.    Tax Withholding.

12      Unless the Plan Administrator elects to do otherwise, any and all payments and

13  disbursements under this Plan by the Plan Administrator to any party shall be made free

14  and clear of, and without deduction for, any and all present or future taxes, levies,

15  impounds, deductions, charges, or other withholdings and all liabilities with respect

16  thereto.

17  G.    Unclaimed Distributions and Claim Waiver.

18      The Plan Administrator may draw checks constituting distributions due under this

19  Plan so that such checks will automatically become void if not presented for payment

20  by the payor bank within ninety (90) days after the date of the check. Unless the Court

21  for cause directs otherwise, if the Plan Administrator dispatches any check by first-class

22  mail to the payee's last-known mailing address within fourteen (14) days after the date

23  of such check, and thereafter such check becomes void, the claim on account of which

24  the check was dispatched shall be deemed withdrawn and disallowed; the holder of

25  such shall be barred from seeking further recovery on account of that claim; and the

26  unclaimed distribution shall become available for distribution to other claim holders

27  under this Plan. Notwithstanding the provisions above, should the Plan Administrator

28  determine in his sole discretion that it is not economically prudent to redistribute such

1  funds, such funds shall be considered and treated as unclaimed property under § 347(a)

2  of the Code.

3  H.  Successor Plan Administrator.

4  Should Jon Tesar be unable to assume the duties of Plan Administrator on the

5  Effective Date, or if he should be unable or unwilling to continue to perform such duties

6  after the Effective Date, the court shall be authorized to appoint a replacement Plan

7  Administrator on motion of any interested party, including the U.S. Trustee.  Should a

8  successor be unable or unwilling to continue to perform his or her duties as Plan

9  Administrator after appointment, the court shall be authorized to appoint a replacement

10  Plan Administrator on motion of any interested party, including the U.S. Trustee.

11  I.  Jurisdictional Limitations.  Should any party in interest assert that the conduct of

12  the Plan Administrator or professionals engaged by the Plan Administrator is not

13  consistent with the provisions of this Plan, or should any party in interest assert any

14  claim against the Plan Administrator or professionals engaged by the Plan Administrator

15  for any conduct within the scope of his or her duties under this Plan, all such claims,

16  rights, requests for relief, or requests for enforcement of rights must be filed in and

17  determined by the Court, which shall have exclusive jurisdiction of same.  The Court

18  shall have exclusive jurisdiction for the determination or enforcement of any rights under

19  or arising from this Plan.

20  J.  Exemption from Transfer Taxes.  Pursuant to § 1146(c) of the Code, the

21  issuance, transfer, or exchange of any notes or equity securities under the Plan, the

22  creation of any mortgage, deed of trust, or other security interest, the making or

23  assignment of any lease or sublease, the sale or other transfer of any assets by the Plan

24  Administrator to a third party, or the making or delivery of any deed or other instrument

25  of transfer under, or in furtherance of, or in connection with the Plan, including any

26  deeds, bills of sale, or assignments executed in connection with any of the transactions

27  contemplated under the Plan, shall not be subject to any stamp, transfer, real estate

28  transfer, mortgage recording, sales, or similar tax.

K.      General Provisions.

Severability.  If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

Binding Effect.  The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

Cramdown.  Pursuant to § 1129(b) of the Code, the Plan Proponents reserve the right to seek confirmation of the Plan notwithstanding the rejection of the Plan by one or more classes of creditors.

Captions.  The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

Notice to Plan Administrator.  Unless otherwise agreed by the Plan Administrator in writing, all notices and written communications to the Plan Administrator shall be provided to his attorneys.  The addresses for the Plan Administrator and his attorneys, unless other instructions or addresses are provided in writing, shall be:

Plan Administrator                    Anthony Asebedo, Esq.
Jon Tesar                             Meegan, Hanschu & Kassenbrock
P.O. Box 255544                       11341 Gold Express Drive, Suite 110
Sacramento, CA 95865                  Gold River, CA 95670
e-mail: jontesar@msn.com              Fax:  (916) 925-1265

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

Plan Controls.  Should there be any inconsistency between the terms

2   stated in the Disclosure Statement and the terms of this Plan, the terms of this Plan

3   shall control and take precedence.

4

5   Dated: _____          MEEGAN, HANSCHU & KASSENBROCK

6

7                                    By:_____
                                        Anthony Asebedo
8                                       Attorneys for the Debtor

9

10  Dated: _____          _____
11                                    Jon Tesar
                                      Trustee, Case No. 09-29936-C-11
12

13  Dated:_____           BERNHEIM GUTIERREZ & McCREADY

14

15                                   By:_____
                                        William S. Bernheim
16                                      Attorneys for the Debtors

17

18  Dated: _____          _____
                                      Paul Sandner Moller
19

20  Dated: _____          _____
21                                    Rosa Maria Moller

22

23

24

25

26

27

28